[No. 38944. Department Two. May 11, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. JOE J. JOHNSON
*et al., Appellants.*\*

*Edward Heavey* and *Timothy H. Hill,* for appellants (appointed counsel for appeal).

*Charles O. Carroll* and *J. Robert Walker,* for respondent.

HUNTER, J.—This appeal is taken from the conviction and sentence of the defendants (appellants), Joe J. Johnson and Jack R. Irrgang, for the crime of grand larceny in the

\*Reported in 427 P.2d 705.

taking of coins from parking meter receptacles at the Seat-tle-Tacoma International Airport. The sole issue in this case relates to the admissibility in evidence of certain coins, including a bag of quarters, seized from the defendant Irrgang's 1956 Pontiac automobile as the result of an alleged unlawful search. The pertinent facts are as follows:

On the evening of February 28, 1966, an observant citizen, David Rystrom, advised Officer Weldon Emerson, a security officer at the airport, that someone was tampering with a parking meter in the main front parking lot of the airport complex. The officer accompanied Mr. Rystrom to where he had observed the meter tampering. They noticed the defendant Johnson get out of a 1956 Pontiac 4-door sedan and walk toward them. Johnson was staggering and bumped into a car and several parking meters. Rystrom told the officer that this was the man he had seen at the parking meter.

Officer Emerson then addressed Johnson and asked him what he was doing at the airport and what business he had in the 1956 Pontiac. The defendant replied: "I was trying to make a heist. . . . I'm trying to steal anything, you stupid cop." Emerson, observing a heavy odor of alcohol on Johnson's breath and considering the remarks he had made, concluded that Johnson was intoxicated and placed him under arrest for being drunk in public. Feeling that Johnson was trying to get him away from the automobile, and suspecting other crimes, Emerson directed that the three of them cross the parking lot to the Pontiac, some 90 feet away. At the car, Emerson looked through the side window into the back seat, and noticed 4 quarters on the floorboard of the car. (The airport meters in question take quarters only.) He handcuffed the defendant Johnson and directed Rystrom to open the doors of the car and check the contents.

Rystrom entered the car and found some paper dollars and change on the front seat, the 4 quarters on the floorboard of the rear seat, a few loose quarters and a shaving kit full of quarters in the shadows of the back seat area. At

that time Emerson seized the paper money and took the defendant to the security office of the airport. The defendant was held in the office, on the charge of public drunkenness.

Officer Emerson then returned to the parking lot, with another officer, to keep the automobile under surveillance and see if anybody else returned. The defendant Irrgang arrived a few minutes later and stopped in front of the meter next to the Pontiac. Emerson struck up a conversation with him and asked if the Pontiac was his car. Irrgang acknowledged it was and Emerson, advising him that someone had been seen in his car, asked him if it would be all right if he looked into the trunk of the vehicle. Emerson advised Irrgang that he wasn't obliged to consent. Irrgang consented. Emerson found some loose quarters in the trunk space, and then asked Irrgang if the shaving kit in the back seat belonged to him. Irrgang replied that it didn't. Emerson thereupon picked up the loose quarters from the trunk and those previously seen on the seats and floorboard of the vehicle and put them all in the shaving kit. He took the kit and Irrgang to the security office.

At the office the defendants were advised that they were under arrest; Johnson was charged with the crime of public drunkenness, a misdemeanor; and tampering with a parking meter, a gross misdemeanor; Irrgang, with the crime of aiding and abetting in the tampering of a parking meter. A preliminary count of the silver from the shaving kit at this time revealed it to contain approximately $24 worth of quarters.

Both defendants were advised of their constitutional rights at this point in the interrogation, although Irrgang contends that such advice did not come until after the final search.

Irrgang was asked by officers if he would mind a search of the entire automobile; he replied, "be my guest" and handed them the keys. The security officers returned to the automobile and conducted a thorough search of the car and the area immediately around the vehicle and the parking

meters in and around the remainder of the main parking lot. They found a number of quarters in the glove compartment of the vehicle, and the area search revealed other quarters scattered on the pavement. The final count of the quarters so found, including the $24 in the shaving kit, came to over $250. The determination was made that about 30 parking meters had been looted and 2 days later the defendants were charged with the felony of grand larceny.

At a pretrial hearing as to the lawfulness of the arrests and the searches and seizures of evidence, the trial court ruled that the arrests were lawful; that Johnson's arrest for intoxication was valid; and that the three searches of the automobile were incident to the arrest for drunkenness. It denied the motion to suppress the coins and shaving kit taken by officers in these searches. Both defendants appeal from this ruling and the convictions and sentences entered. Error is assigned to the denial of the motion to suppress.

Defendant Johnson argues that his arrest for being drunk in public was only a pretense used by the officer as a legal basis to search the automobile for evidence of meter tampering; that he could not be arrested for meter tampering without a warrant, since this constituted a misdemeanor which had not been committed in an officer's presence; and that the search was not incident to the arrest for drunkenness.

 For the search to have been lawful, it must have been incident to a lawful arrest in the absence of the consent of the defendant. *State v. Schwartzenberger,* 70 Wn.2d 103, 422 P.2d 323 (1966); and *State v. Wilson,* 70 Wn.2d 638, 424 P.2d 650 (1967); *Preston v. United States,* 376 U.S. 364, 11 L. Ed. 2d 777, 84 Sup. Ct. 881 (1964); *Taglavore v. United States,* 291 F.2d 262 (9th Cir. 1961).

There is no evidence in this record to support the trial court's finding that the initial search of the car was incident to the arrest of Johnson for intoxication. To the contrary, the testimony of the officer admittedly shows that the search was made in pursuance of the statements of the defendant admitting car prowl, which the officer disbe-

lieved, suspecting an attempt by the defendant to throw him off the track; that these suspicions were confirmed upon seeing the 4 quarters on the rear floorboard of the car. Under these circumstances, the search was not incident to the arrest of the defendant for public drunkenness. See *Preston v. United States, supra; Cooper v. California,* 386 U.S. 58, 17 L. Ed. 2d 730, 87 Sup. Ct. 788 (1967); *State v. Michaels,* 60 Wn.2d 638, 374 P.2d 989 (1962); *State v. Riggins,* 64 Wn.2d 881, 395 P.2d 85 (1964).

■ We agree with the defendants' contention that their arrest for tampering with a coin receptacle (RCW 9.61.220), a misdemeanor, was invalid; since this offense was not committed in the presence of the arresting officer. *State v. Hughlett,* 124 Wash. 366, 214 Pac. 841 (1923); *State v. Davis,* 69 Wn.2d 127, 417 P.2d 622 (1966). The search of a vehicle cannot be justified as incident to an unlawful arrest. See *People v. Caliente,* 12 N.Y.2d 89, 187 N.E.2d 550 (1962). We need not determine whether the officer had reasonable grounds to believe the defendants had committed a felony as no arrest for a felony was made until 2 days after the searches. None of the searches made could be sustained as incident to this arrest. *State v. Brooks,* 57 Wn.2d 422, 357 P.2d 735 (1960); *State v. Biloche,* 66 Wn.2d 325, 402 P.2d 491 (1965).

■ Defendant Irrgang contends no effective consent was given to justify the second search. The consent given for the search was limited to the contents of the trunk and was effective only for that purpose. The consent did not extend to the remainder of the car from which the officer seized the quarters on the floorboard, the shaving kit full of quarters on the rear seat, and the other loose quarters discovered in the passenger compartment and seized at this time. The admission of these quarters in evidence by the trial court was therefore in error. *Honig v. United States,* 208 F.2d 916 (8th Cir. 1953).

We are satisfied that the remainder of the quarters introduced in evidence, as the product of the third search, were admissible in evidence. The record is clear that these quar-

ters were taken pursuant to the voluntary, consent of the owner of the car, Irrgang, given at the security office, and did not result from any knowledge illegally acquired pursuant to the previous searches. See *Wong Sun v. United States,* 371 U.S. 471, 9 L. Ed. 2d 441, 83 Sup. Ct. 407 (1963). This final search, predicated on a valid consent to search the entire automobile, was therefore lawful and the evidence obtained therefrom was properly admitted.

▇ Irrgang contends that he could not give an effective consent to either of the last two searches for the reason that he had not been fully advised of his constitutional rights, as required under *Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, 84 Sup. Ct. 1758 (1964). We disagree. The constitutional protection under *Escobedo* extends only to oral incriminations and is unrelated to the acquisition of physical, tangible evidence, obtained by officers during an investigation of a criminal offense, after voluntary consent to a search is given. *State v. Craig,* 67 Wn.2d 77, 406 P.2d 599 (1965). *Schmerber v. California,* 384 U.S. 757, 16 L. Ed. 2d 908, 86 Sup. Ct. 1826 (1966).

Although the trial court erred in failing to suppress the approximately $24 worth of quarters in the shaving kit, the 4 quarters on the rear floorboard, and the few loose quarters found on the rear seat; nevertheless there was at least $225 worth of quarters properly admitted in evidence to support the essential ingredient of grand larceny, *i.e.,* that the value of the stolen property was in excess of $75.

▇ The constitutional error by the trial court in admitting the illegally seized quarters does not require automatic reversal of these convictions. This conclusion is particularly fortified by the recent decision of the United States Supreme Court in *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 Sup. Ct. 824 (1967), wherein the federal standard for determining harmless constitutional error was applied to the states, as follows:

> There is little, if any, difference between our statement in *Fahy v. Connecticut* [375 U.S. 85, 86] about "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and

requiring the beneficiary [prosecutor] of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

Applying the foregoing standard, we have no doubt that the error of the trial court in admitting the illegally seized quarters was harmless to the defendants. It could make no difference in the determination of guilt or innocence by the jury whether the defendants had stolen $225 worth of quarters or $250 worth, so long as the admissible evidence supported the finding that the statutory amount was taken.

The judgment is affirmed.

FINLEY, C. J., DONWORTH and HAMILTON, JJ., and STAFFORD, J. Pro Tem., concur.