[No. 6681–5–II. Division Two. November 26, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. ROGER
D. MCINTYRE, *Appellant.*

2

*Monte Hester*, for appellant.

*Michael G. Spencer, Prosecuting Attorney,* and *W. David Rovang, Deputy,* for respondent.

WORSWICK, A.C.J.—Roger McIntyre was convicted of assault in the second degree (RCW 9A.36.020(c)) for threatening to kill an Elma police officer with his own gun. On appeal, he contends that his arrest was illegal, and that the gun seized during the arrest and a statement he made immediately after the arrest should have been suppressed. We affirm.

McIntyre challenges none of the 10 findings of undisputed facts made following the CrR 3.6 suppression hearing. They are verities on appeal. *State v. Christian,* 95 Wn.2d 655, 628 P.2d 806 (1981). He does assign error to three of the court's findings as to disputed facts.[1] We find

---

[1] The challenged factual findings are as follows:

"III.

"The defendant knew that police were outside the house where he was ultimately arrested and that the police were seeking to arrest him.

"IV.

"Arresting officers had reason to believe that defendant was a danger to the community and that he may attempt to escape if not immediately apprehended.

"V.

"Arresting officers had reason to believe that valuable evidence may be destroyed if the defendant were not immediately apprehended."

the challenge without merit except with reference to the finding that the officers feared McIntyre would destroy evidence. *See State v. Daugherty,* 94 Wn.2d 263, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958 (1981). That he could not destroy the gun under the circumstances, however much he wanted to, is conceded by the State but is unimportant for disposition of this appeal.

At about 1 a.m. on June 6, 1982, Officer Foy of the Elma Police Department stopped McIntyre for driving a pickup pulling a trailer that had defective lights and no license plate. The truck license and McIntyre's driver's license were from Oregon. McIntyre was drunk, so Foy arrested him. A struggle ensued, during which McIntyre relieved Foy of his .357 magnum service revolver. He threatened to kill Foy with the gun, and then escaped in his truck taking the gun with him.

The Elma police enlisted help from the Grays Harbor Sheriff's Office and the Oakville Police Department to search for McIntyre. Foy had kept McIntyre's driver's license and had recorded the license number of the truck. When this information was broadcast by radio to the other departments, a citizen in Satsop heard it on a scanner. He recognized the license number as belonging to a truck he had seen in his neighborhood. He called the Elma police and told them he had recently seen the truck's owner moving furniture from a house in Satsop. The police immediately went to the house. They did not obtain a search or arrest warrant.

McIntyre was not there. While police were talking to the occupant of the house, the citizen appeared and pointed out another house which he said was occupied by a friend of the truck owner. The police immediately surrounded the second house which, it turned out, was being rented by a Mr. and Mrs. Green.

Two policemen, one in full uniform and one in civilian clothes but wearing a uniform jacket, approached the front door of the Green house. Another policeman saw a male look out the window and then duck out of sight. The police

then heard running footsteps, and McIntyre opened the back door. A policeman stationed near the rear of the house recognized him from his driver's license picture and shouted "there he is." McIntyre retreated into the house.

The two policemen at the front knocked on the door. It was opened by a woman. They identified themselves and asked if the person they were looking for was inside. The woman said "Yes, please don't hurt him." The policemen then entered the house, arrested McIntyre and recovered the gun which was on a nearby table.

The police searched McIntyre for weapons and led him outside. As he was going, McIntyre said he was sorry and had not meant to hurt anyone. This statement was not in response to questioning, but preceded advice to him of his *Miranda* rights (*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966)).

McIntyre contends that neither probable cause nor exigent circumstances existed to excuse the warrantless entry of the house and his subsequent arrest. The probable cause contention is easily disposed of. One of the policemen saw McIntyre in the house and recognized him. The woman at the front door said he was in the house. This statement was not, as McIntyre contends, elicited in violation of the woman's *Miranda* rights. She was not in custody. The police had no probable cause to arrest her nor did they intend to hold her as a suspect. They merely asked her if McIntyre was in the house. There was no custodial interrogation. *State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984). Moreover, the woman's Fifth Amendment privileges cannot be asserted by McIntyre. *State v. Dickens,* 66 Wn.2d 58, 401 P.2d 321 (1965). The statement was legally obtained and either it or the sighting alone gave the police probable cause to believe that McIntyre was in the house.

Nevertheless, the police could not effect a warrantless entry into the house absent exigent circumstances. *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S.

Ct. 1371 (1980).[2] McIntyre challenges the trial court's conclusion that exigent circumstances existed in this case. He contends that he could not escape, was not a danger to the public, and could not destroy any evidence. We disagree.

The *Payton* Court declined to be specific as to what exigent circumstances would excuse the police from obtaining a warrant. *Payton,* 445 U.S. at 583. More recently, the Supreme Court, in *Welsh v. Wisconsin,* ___ U.S. ___, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984), identified *Dorman v. United States,* 435 F.2d 385 (D.C. Cir. 1970) as a leading case in defining exigent circumstances.

*Dorman* is particularly applicable here. It enumerates six elements to aid in determining when a warrantless police entry into a home is justified: (1) a grave offense, particularly a crime of violence, is involved; (2) the suspect is reasonably believed to be armed; (3) there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe the suspect is on the premises; (5) the suspect is likely to escape if not swiftly apprehended; and (6) the entry is made peaceably. *Dorman,* 435 F.2d at 393. All of these elements are present in this case. They justify a conclusion that McIntyre was highly dangerous to the police or the public. Such danger has been recognized as demonstrating exigent circumstances justifying a warrantless search and arrest. *See State v. Counts,* 99 Wn.2d 54, 60, 659 P.2d 1087 (1983); *State v. Reid,* 38 Wn. App. 203, 687 P.2d 861, *review denied,* 102 Wn.2d 1025

---

[2]*Payton* required that police obtain an arrest warrant before entering a suspect's home to arrest him, absent exigent circumstances. A later case, *Steagald v. United States,* 451 U.S. 204, 68 L. Ed. 2d 38, 101 S. Ct. 1642 (1981), required a search warrant, absent exigent circumstances, before police could enter the home of a person other than that of the suspect they were searching for and seize evidence to use against the homeowner. The Supreme Court limited the holding in *Steagald* to apply only to challenges raised by the homeowner. *Steagald,* 451 U.S. at 219. Neither case factually matches the circumstances here, where the suspect is challenging the entry of a third person's home by police who possessed neither a search nor arrest warrant. The differences do not affect the outcome of this case however, since both *Payton* and *Steagald* allows entry if exigent circumstances are shown.

6

(1984); *State v. Welker,* 37 Wn. App. 628, 683 P.2d 1110, *review denied,* 102 Wn.2d 1006 (1984).

A claim of exigent circumstances must also be scrutinized in view of the alternative of either entering or of guarding the premises while the usual warrant or a telephonic warrant is sought. *Welker,* 37 Wn. App. at 633. The claim here survives such scrutiny. McIntyre had assaulted a policeman with his own gun, had escaped but a few hours before, was positively identified and was in the house with other people. It was reasonable to assume that he was armed and dangerous, and that if he escaped again he would return to Oregon. Under these circumstances, the police were justified in acting without a warrant.

 McIntyre also contends that the police violated RCW 10.31.040, the "knock and announce" statute. The contention is without merit. Compliance with the statute is excused if exigent circumstances are shown. *State v. Coyle,* 95 Wn.2d 1, 621 P.2d 1256 (1980); *State v. Reid, supra.* Moreover, compliance with the "knock and announce" statute would have been a useless gesture since the police were virtually certain that McIntyre was aware of their presence and purpose after he looked out the back door, was recognized and retreated into the house. *Coyle,* 95 Wn.2d at 11.

 We also find without merit McIntyre's contention that the statement he made shortly after being arrested should have been suppressed under *Miranda v. Arizona, supra. Miranda* warnings need be given only when the suspect is subject to custodial interrogation or its functional equivalent. *Rhode Island v. Innis,* 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980). McIntyre's statement was not prompted by questioning. The actions by the police were those normally attendant to arrest, and were not equivalent to interrogation. *Innis,* 446 U.S. at 301.

Affirmed.

PETRIE and REED, JJ., concur.

Review denied by Supreme Court February 1, 1985.