[No. 12071–2–II.   Division Two.   July 18, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES
MACHADO, *Appellant*.

*Diane M. Woolard,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Philip A. Meyers, Deputy,* for respondent.

THOMPSON, C.J.*—James Machado appeals his conviction for first degree robbery, RCW 9A.56.190, .200. He contends he was detained illegally soon after the robbery, and his and another man's arrest several hours later also were illegal. We affirm.

In the early morning of April 2, 1988, Corporal Thomas McNicholas and Officer Todd Ackerman of the Vancouver, Washington, police department were dispatched to a Safeway store at 3707 Main Street in Vancouver.[1] The store had been robbed. Corporal Craig Atkins, who was responding to an unrelated call 10 to 12 blocks away, heard the dispatch. Within minutes, he saw a green car drive slowly past his position on "M" Street. He shone his flashlight on the two white males in the car, but they did not react to his presence or seem to acknowledge he was there. Corporal Atkins got in his patrol car and followed the green car for about two blocks until "M" Street came to a dead end. The green car pulled into a driveway and stopped. Corporal Atkins also stopped, but was unable to read the faded license plate.

The passenger in the green car got out and walked away at a brisk pace. The driver of the green car, Mr. Machado, got out and walked toward Corporal Atkins' car. Corporal

---

*This appeal was heard by a panel of Division Three judges sitting in Division Two.

[1]Mr. Machado has not assigned error to or otherwise challenged the court's findings of fact. Thus, they are treated as verities on appeal. *State v. Christian,* 95 Wn.2d 655, 656, 628 P.2d 806 (1981).

Atkins got out of his patrol car and asked Mr. Machado for identification. Mr. Machado offered to get his driver's license from his car, but Corporal Atkins became uneasy and asked Mr. Machado only for his name and birthdate. Mr. Machado gave this information, and Corporal Atkins got into his patrol car and left. The officer noted Mr. Machado was wearing a gray sports coat, gray pants, and a blue fishnet T–shirt, and had red hair in a style similar to an Afro, with a thin, scruffy beard.

Meanwhile, Corporal McNicholas and Officer Ackerman had gone to the Safeway store and interviewed witnesses to the robbery. The checker said a white male had opened his coat to reveal a weapon, longer than a typical handgun, under his arm. She described the robber as 5 feet 9 inches tall, weighing 130 to 140 pounds, with reddish–brown, curly, Afro–like hair. She said he was wearing gray pants, a blue fishnet tank top and a gray jacket, and had tape on his thumb. Other witnesses gave similar descriptions. Corporal McNicholas radioed this description to Corporal Atkins, and the officers concluded Mr. Machado fit the description.

Coincidentally, Karrie Kindsfather was in the police station because earlier in the evening other officers had executed a search warrant at her residence. One of the items sought in the search was an automatic weapon. Ms. Kindsfather overheard the radio conversation between Corporal McNicholas and Corporal Atkins, including the description of the suspect and the vehicle. She told officers the car belonged to her boyfriend, Daniel Kincaid, and the last three digits of the license plate were 733. She also said Mr. Machado had been staying at her residence and had borrowed the car the day before, and she believed he would flee with the car. She said Mr. Machado had been accompanied by a white male named Mike, with a possible nickname of "Eerie", who lived with his sister on "W" Street. Corporal McNicholas knew of a white male named Michael Erie.

About 5:30 a.m. the officers found a green car with Washington license number GJF 733 on "W" Street. They

verified the car was registered to Daniel Kincaid, and a red car in a nearby apartment parking lot was registered to Dawnelle Erie. Corporal McNicholas and Corporal Atkins learned from a neighbor that Dawnelle Erie lived in upstairs apartment C. The trial court found that between 5:40 and 6 a.m.:

Cpls. Atkins and McNicholas went to the door of Apartment C. Cpl. Atkins knocked on the door. Dawnelle Erie opened the door. Cpl. Atkins asked if this was the Erie residence and she said "yes." Cpl. [Atkins] said, "Where's Mike?" Dawnelle Erie opened the door further. Cpl. Atkins saw the defendant, whom he recognized from the earlier contact, seated on the couch. He also observed another white male laying [sic] on the couch. Cpl. Atkins said "There he is", or "That's him." Atkins, McNicholas and [Officer James] Wessels, who had been stationed on the stairs, entered the apartment and arrested the defendant and Michael Erie, placing both in handcuffs.

The officers searched Mr. Machado and found $203 concealed in his sock, and $12 in currency in his pants pocket. Mr. Erie later gave officers information that led them to a weapon under a bush near the apartment. This weapon was believed to have been used in the robbery.

After a hearing on Mr. Machado's motion to suppress, the court found the officers did not attempt to obtain a search warrant for apartment C, or arrest warrants for Mr. Machado or Mr. Erie. The court concluded Corporal Atkins' contact with Mr. Machado on "M" Street was not a stop or seizure, or if it was a stop, it was justified by the officer's reasonable suspicion of criminal activity. The court also concluded Mr. Machado had standing to contest the officers' entry into the apartment, but the entry was justified by exigent circumstances. The court denied the motion to suppress and, in a bench trial, convicted Mr. Machado of first degree robbery.

■ Mr. Machado first contends his encounter with Corporal Atkins on "M" Street was a "seizure" under the fourth amendment to the United States Constitution, and was not justified because the officer did not have reasonable

and articulable suspicion he was engaged in criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). However, a mere request for information does not amount to a constitutional "seizure." *State v. Ellwood,* 52 Wn. App. 70, 73, 757 P.2d 547 (1988); *State v. Aranguren,* 42 Wn. App. 452, 455, 711 P.2d 1096 (1985); *Immigration & Naturalization Serv. v. Delgado,* 466 U.S. 210, 216, 80 L. Ed. 2d 247, 104 S. Ct. 1758 (1984). The essential inquiry is whether, under the circumstances, a reasonable person would believe he was not free to leave. *Ellwood,* at 73; *Delgado,* 466 U.S. at 216; *United States v. Mendenhall,* 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980). Even the fact an officer is in uniform and armed does not convert an otherwise innocent contact into a "seizure". *State v. Belanger,* 36 Wn. App. 818, 820, 677 P.2d 781 (1984).

The facts of this case fully support the trial court's conclusion the encounter was not a "seizure". The passenger was allowed to depart unhindered, and any reasonable person in Mr. Machado's position surely would have believed he also was free to leave. We find no fault with the officer's actions in this situation. The situation must have aroused his suspicion, yet Corporal Atkins realized he had no legally articulable reason to detain Mr. Machado. Therefore, he suspended the encounter before it became a constitutionally cognizable "seizure".

Mr. Machado next contends evidence should have been suppressed because his and Mr. Erie's arrests were unlawful. The Fourth Amendment generally "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton v. New York,* 445 U.S. 573, 576, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980).[2]

---

[2]In this case, Mr. Machado was not arrested at his home, and the State questions whether he has standing to challenge either arrest on the basis of the officers' warrantless entry into a third party's residence. We decline to address these questions, because we conclude the entry was justified by exigent circumstances.

The State argues exigent circumstances justified the police entry.[3] *Payton* is generally recognized as permitting police entry into a home in exigent circumstances, without articulating precisely what those circumstances must be. *See State v. Terrovona,* 105 Wn.2d 632, 644, 716 P.2d 295 (1986); *State v. Counts,* 99 Wn.2d 54, 60, 659 P.2d 1087 (1983). However, the United States Supreme Court has pointed to *Dorman v. United States,* 435 F.2d 385 (D.C. Cir. 1970) as a "leading" case. *See Welsh v. Wisconsin,* 466 U.S. 740, 751, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984). Washington's Supreme Court also has applied the *Dorman* factors in determining whether a warrantless entry was justified. *See State v. Terrovona, supra.*

The factors articulated in *Dorman* are: (1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is reasonably trustworthy information that the suspect committed the crime involved; (4) whether there is strong reason to believe the suspect is on the premises; (5) the likelihood the suspect will escape if not swiftly apprehended; and (6) whether entry is made peacefully. *Dorman,* 435 F.2d at 392–93. The court identified an additional factor, which it said "works in more than one direction": whether the entry was made at night. *Dorman,* 435 F.2d at 393. Other authorities have identified at least one other factor: whether the arrest was part of a planned operation, or resulted from an ongoing investigation in the field. *See* 2 W. LaFave, *Search and Seizure* § 6.1(f), at 600–08 (2d ed. 1987); *see also* Utter, *Survey of Washington Search and Seizure Law: 1988 Update,* 11 U. Puget Sound L. Rev. 411, 562–65 (1988).

Here, as the trial court recognized, the robbery was a grave offense, and there was reason to believe Mr. Machado

---

[3]The State apparently concedes Ms. Erie did not consent to the police entry. The trial court made no finding on that issue.

was armed. The similarity of descriptions given by witnesses and Corporal Atkins, as well as the information provided by Ms. Kindsfather, pointed emphatically to Mr. Machado as the man who committed the robbery. Because Ms. Kindsfather had linked Mr. Machado to Michael Erie and his sister, and because the green car was found outside Ms. Erie's apartment, there was strong reason to believe Mr. Machado was in the apartment. The entry was peaceful. It was made in the early morning, limiting the potential danger to others in the area. Finally, the arrest was not a preplanned operation, but was part of an ongoing field investigation.

The only factor arguably missing in this case is the possibility of escape. The evidence indicates there was no activity around the apartment, and the occupants appeared to be resting when the police entered. The police possibly could have kept the apartment under surveillance and sought a warrant. However, until Ms. Erie opened the door revealing Mr. Machado was there, the officers had only a "strong reason" to believe he was on the premises. Only when the door was opened did the officers have probable cause to search. Under the circumstances they properly chose to defuse the potentially dangerous situation by entering immediately. In addition, at approximately 6 a.m. even a telephonic warrant would have been time consuming. Both Corporal McNicholas and Corporal Atkins testified there was a shortage of police manpower, and extended surveillance would have been difficult. These facts, coupled with the information provided by Ms. Kindsfather that Mr. Machado might flee, justified the warrantless entry. *See State v. McIntyre,* 39 Wn. App. 1, 6, 691 P.2d 587 (1984), *review denied,* 103 Wn.2d 1017 (1985); *State v. Reid,* 38 Wn. App. 203, 210, 687 P.2d 861, *review denied,* 102 Wn.2d 1025 (1984).

Exigent circumstances justified the arrest. Mr. Machado's motion to suppress was properly denied.

The conviction is affirmed.

GREEN and SHIELDS, JJ., concur.

Reconsideration denied November 14, 1989.

Review denied at 114 Wn.2d 1009 (1990).