# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70898-8-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| CHENG S. SAEPHAN, | ) | |
| | ) | |
| Appellant. | ) | FILED: December 15, 2014 |
| | ) | |

APPELWICK, J. — Saephan appeals the denial of his motion to suppress methamphetamine found on his person during a search incident to arrest. Officers apprehended Saephan in his home after his sister reported that he threatened to kill his family members. Saephan argues that the emergency aid exception did not justify the officers' entry into the home. The State maintains that the emergency aid exception applies on these facts. It argues in the alternative that exigent circumstances justified the entry. Saephan further asserts that the trial court failed to enter written findings of fact and conclusions of law after his suppression hearing. We affirm.

## FACTS

On May 10, 2013, Fey Saephan called 911 to report that her brother, Cheng Saephan, was threatening to kill her and their family.[1] Fey told the dispatcher that she was in fear of Saephan, whom she reported was in the basement smoking methamphetamine and was known to carry knives.

Officer Eric Beseler was dispatched to the Saephan residence. This was Officer Beseler's third time responding to a domestic violence call involving Saephan.

---

[1] For the sake of clarity, we refer to the appellant by his last name and his sister by her first name. No disrespect is intended.

During the first incident, Officer Beseler arrested Saephan for violating a court order protecting his father. According to Officer Beseler, Saephan had taken an "aggressive posture" with his father.

The second incident occurred on May 9, 2013. Fey reported that Saephan was acting erratically, smoking methamphetamine, speaking in gibberish, shouting, and swiping at the air with a knife. When Officer Beseler arrived, Saephan was in the shower talking to himself. Officer Beseler removed Saephan from the shower. Saephan said that President Barack Obama said to call him "Lightning Bolt." Otherwise, he mostly spoke in gibberish. Medical personnel decided to transfer Saephan to Harborview Medical Center for a mental health evaluation and possible involuntary commitment.

The third incident occurred the next day, when Saephan returned to the home he shared with Fey, their two brothers, and their parents. Saephan was upset with his family for calling the police and having him committed. He threatened to kill them and told them they were all going to hell. Saephan also threatened to kill Fey's unborn baby. Fey called the police again.

According to the dispatch, there were five people in the house and Saephan was in the basement. Officer Beseler arrived at 12:44 p.m., three minutes after the dispatch. Officer Beseler believed that Saephan and his family members were still inside the house when he arrived. He was aware of Saephan's reported methamphetamine use, mental instability, prior aggressive behavior, and possession of a knife. As a result, he was concerned about officer safety, the family members' safety, and Saephan's health. He waited for additional backup.

2

Officer Richard Bourns arrived at 12:51 p.m. He exited his car and walked toward the house. Officer Bourns could see Officer Beseler speaking with Fey. He could not hear their conversation, because he stopped about 15 feet away to keep a wide view of the scene. He observed that Officer Beseler talked to Fey for about 30 seconds and that Fey looked concerned.

Based on his conversation with Fey, the dispatch information, and his prior contacts with Saephan, Officer Beseler determined that Saephan needed to be taken into custody and was most likely in the basement of the house. The basement could be accessed by an exterior lower-level door. The officers approached the door, and Officer Beseler pushed it open. Neither officer could see anyone in the immediately accessible area, but they could tell that there were additional rooms in the basement. Officer Beseler called out Saephan's name and ordered him to come out with his hands up.

Saephan eventually walked out of a basement room with his hands up. He then stopped about 20 feet away from the officers and appeared confused. From that distance, the officers could not tell whether Saephan had access to weapons or other areas of the house. The officers were concerned about other family members who were in the house at the time.

Officer Beseler asked Saephan to step toward them. Saephan did not comply. The officers stepped inside the doorway. Officer Beseler again asked Saephan to come closer. Saephan again did not comply. Officer Bourns further entered the basement and grabbed Saephan's arm. Officer Beseler grabbed Saephan's other arm and the two officers escorted Saephan out of the house.

Officer Beseler handcuffed and arrested Saephan for the reported threats he made to his family members. Officer Bourns conducted a search incident to arrest and found a bag of suspected methamphetamine.

The State charged Saephan with harassment-domestic violence and possession of methamphetamine in violation of the Uniform Controlled Substances Act, chapter 69.50 RCW.

Saephan moved to suppress evidence of the methamphetamine. He argued that the officers unlawfully entered his home without a warrant and in the absence of exigent circumstances. The State asserted that the officers acted lawfully under the emergency aid doctrine.

At the CrR 3.6 hearing, the court orally denied Saephan's motion:

> I find that the evidence preponderates in favor of the view that, in fact, Officer Beseler did know about specific threats from Ms. Saephan prior to entering into the house . . . and, therefore, there was probable cause to enter the house and arrest Mr. Saephan.

The court later entered the following conclusions of law:

1. At the time the officers entered the basement of this residence, they had probable cause to arrest the Defendant based on the totality of the reasonably trustworthy information available to them.

2. The emergency doctrine validated this brief entry into the basement of the Saephan home without a warrant to arrest the Defendant. Given the totality of the information available to the officers, they were clearly motivated by the need to render aid or assistance inside the home. The entry into the home was not a pretext for conducting an evidentiary search, as in fact no search was conducted inside the home. The officers complied with their duty to ensure conditions at the residence returned to normal and that the home was safe for all residents.

3. The baggie of suspected methamphetamine is admissible. It was found in the Defendant's pocket during a search incident to his a [sic] lawful arrest, after the Defendant had been located during a valid entry into the Saephan home.

4

The jury acquitted Saephan of harassment. It found him guilty of methamphetamine possession. He appeals his conviction. .

DISCUSSION

I. <u>Motion to Suppress</u>

Saephan argues that the trial court erred in denying his motion to suppress, because the officers' warrantless entry into his home violated his rights under the federal and state constitutions. He asserts that the emergency aid exception did not apply, because the officers entered his home with the intent to arrest him, not to render aid. The State argues that the emergency aid exception justified the officers' entry. In the alternative, the State asserts that the officers' entry was justified by the exigent circumstances doctrine.

When reviewing the trial court's denial of a motion to suppress, we ask whether substantial evidence supports the challenged findings of facts and whether the findings support the trial court's conclusions of law. <u>State v. Gibson</u>, 152 Wn. App. 945, 951, 219 P.3d 964 (2009). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the finding's truth. <u>State v. Hill</u>, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Unchallenged findings of fact become verities on appeal. <u>Gibson</u>, 152 Wn. App. at 951. We review conclusions of law de novo. <u>State v. Hinton</u>, 179 Wn.2d 862, 867, 319 P.3d 9 (2014).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution protect against unreasonable searches and seizures. <u>State v. Williams</u>, 102 Wn.2d 733, 736, 689 P.2d 1065 (1984). Warrantless searches and seizures are unconstitutional unless covered by an exception to the warrant requirement.

5

State v. Gatewood, 163 Wn.2d 534, 539, 182 P.3d 426 (2008). Exceptions to the warrant requirement are "'jealously and carefully drawn.'" State v. Reichenbach, 153 Wn.2d 126, 131, 101 P.3d 80 (2004) (internal quotes omitted) (quoting State v. Hendrickson, 129 Wn.2d 61, 72, 917 P.2d 563 (1996)). Under the Washington State Constitution, "the home enjoys a special protection." State v. Schultz, 170 Wn.2d 746, 753, 248 P.3d 484 (2011). Absent consent or exigent circumstances, the federal and state constitutions prohibit warrantless entry into the home to make an arrest, even if probable cause exists to make the arrest. Payton v. New York, 445 U.S. 573, 587-88, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); State v. Holeman, 103 Wn.2d 426, 427, 693 P.2d 89 (1985); State v. Ramirez, 49 Wn. App. 814, 818, 746 P.2d 344 (1987).

One exception to the warrant requirement is the emergency aid exception. Schultz, 170 Wn.2d at 754. It "'allows for the limited invasion of constitutionally protected privacy rights when it is necessary for police officers to render aid or assistance.'" Id. (quoting State v. Thompson, 152 Wn.2d 793, 802, 92 P.3d 228 (2004)). To prove the emergency aid exception, the State must demonstrate that (1) the police officer subjectively believed that someone likely needed assistance for health or safety concerns; (2) a reasonable person in the same situation would similarly believe that there was need for assistance; and (3) there was a reasonable basis to associate the need for assistance with the place being searched.[2] Id. at 754, 759.

---

[2] In Schultz, the Supreme Court noted that "the Court of Appeals has suggested three more factors." Id. at 754. It is presently unclear whether all six factors must be met for the emergency aid exception to apply. Compare id. at 755 (stating "We agree" after listing the three additional factors); 760 n. 5 ("[T]he failure to meet any factor is fatal to the lawfulness of the State's exercise of authority.") with State v. Smith, 177 Wn.2d 533, 541-42, 303 P.3d 1047 (2013) (applying only the original three factors in upholding a search

Another exception to the warrant requirement is the "exigent circumstances" doctrine. State v. Cardenas, 146 Wn.2d 400, 405, 47 P.3d 127, 57 P.3d 1156 (2002). The rationale behind this exception is to "permit a warrantless search where the circumstances are such that obtaining a warrant is not practical because the delay inherent in securing a warrant would compromise officer safety, facilitate escape or permit the destruction of evidence." State v. Audley, 77 Wn. App. 897, 907, 894 P.2d 1359 (1995). Danger to the arresting officer or to the public can constitute an exigent circumstance. State v. Counts, 99 Wn.2d 54, 60, 659 P.2d 1087 (1983).

The distinction between the two doctrines is not always clear. See, e.g., State v. Raines, 55 Wn. App. 459, 463-65, 778 P.2d 538 (1989) (applying the emergency aid factors, but using the heading "Exigent Circumstances" and concluding that "exigent circumstances" justified entry); State v. Bakke, 44 Wn. App. 830, 832, 839-40, 723 P.2d 534 (1986) (stating that the question presented is whether the entry fell "within the emergency exception," but holding that "exigent circumstances" justified the entry). Earlier Washington cases suggested that the emergency aid exception is a subset of the exigent circumstances doctrine. See, e.g., State v. Loewen, 97 Wn.2d 562, 567-68, 647 P.2d 489 (1982); State v. Sanders, 8 Wn. App. 306, 310, 506 P.2d 892 (1973). More recent cases analyze the emergency aid exception under the separate "community caretaking" category. See, e.g., State v. Kinzy, 141 Wn.2d 373, 387, 5 P.3d 668 (2000); see also State v. Smith, 165 Wn.2d 511, 519, 199 P.3d 386 (2009).

---

under this exception). However, because we find that the emergency aid exception does not apply on these facts, see infra, we need not address this disparity.

We believe that the latter is the correct approach. Admittedly, the two doctrines have overlapping rationales, and it is conceivable that a particular emergency could trigger both. See State v. Muir, 67 Wn. App. 149, 153-54, 835 P.2d 1049 (1992) (discussing State v. Campbell, 15 Wn. App. 98, 547 P.2d 295 (1976)). Importantly, however, the exceptions have distinct purposes. The exigent circumstances exception is triggered by a general law enforcement emergency, such as a fleeing felon or destruction of evidence. Muir, 67 Wn. App. at 152-53. The emergency aid exception, while also rooted in exigency, is narrower. Sanders, 8 Wn. App. at 310. It allows officers to render aid and assistance to a person whom they reasonably believe is in distress and need of assistance. See id.

Saephan argues that the emergency aid doctrine did not authorize the officers to enter his home, because they did so to arrest him for harassment—not to render aid. We agree that the emergency aid exception is inappropriate on these facts. When faced with a need for assistance, the officers did not immediately locate the targets of Saephan's threats and remove them from the residence for their safety. Instead, the officers went directly to Saephan's likely position and apprehended him. This approach quickly neutralized the threat. But, it was inconsistent with community caretaking and rendering aid to distressed persons. Instead, it resembled a response to a law enforcement emergency. This illustrates the distinction between the emergency aid exception and exigent circumstances. In light of the differing purposes for these exceptions, we hold that the trial court erred in concluding that the emergency aid exception justified the officers' warrantless entry.

However, the State argues that the officers' entry was also justified by the exigent circumstances doctrine. This court may affirm the trial court on any grounds established by the pleadings and supported by the record. Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wn.2d 751, 766, 58 P.3d 276 (2002). When reviewing a warrantless entry under the exigent circumstances doctrine, we evaluate whether the totality of the circumstances justifies the intrusion. Smith, 165 Wn.2d at 518. Six factors guide our analysis:

> "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) whether there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry [can be] made peaceably."

Id. (alteration in original) (quoting Cardenas, 146 Wn.2d at 402). Because we examine the totality of the situation, circumstances may be "exigent" even if they do not satisfy all six factors. Id.

For example, in State v. Machado, 54 Wn. App. 771, 777, 775 P.2d 997 (1989), the court found exigent circumstances where five of the six factors were present. There, officers entered a third party's apartment without a warrant, found Machado inside, and arrested him for robbery. Id. at 772, 774. The trial court denied Machado's motion to suppress. Id. at 774. It noted that robbery was a grave offense and there was reason to believe Machado was armed, based on a witness's report that Machado had a gun. Id. at 773, 776-77. In addition, there was evidence that Machado had committed the robbery and was inside the apartment. Id. at 773, 777. And, the officers entered peaceably. Id. at 777. The court also reasoned that "the arrest was not a preplanned operation, but was part of an ongoing field investigation." Id. The court of appeals upheld the denial of

9

Machado's motion. Id. It observed that the fifth factor, likelihood of escape, was arguably missing from the facts before it. Id. However, it found that this absence did not preclude application of the exception: "Under the circumstances [the officers] properly chose to defuse the potentially dangerous situation by entering immediately." Id.

Exigent circumstances likewise justified the officers' entry into Saephan's home. Saephan was reported to have committed a grave, violent offense—the threat to kill his family members. See, e.g., State v. McIntyre, 39 Wn. App. 1, 2, 5, 691 P.2d 587 (1984) (threat to kill police officer is grave offense); see also Ramirez, 49 Wn. App. at 819 (noting that federal law limits entry under exigent circumstances to felony arrests); RCW 9A.46.020(2)(b)(ii) (threat to kill is class C felony). Based on the dispatch report and Officer Beseler's experience, Saephan was reasonably believed to be armed with a knife and there was reasonably trustworthy information that Saephan was guilty of making the threat. In addition, Officers Beseler and Bourns arrived soon after dispatch reported that Saephan was in his basement room (three and ten minutes later, respectively). The officers thus had strong reason to believe that Saephan was on the premises. And finally, the officers entered peaceably.

As in Machado, there is no evidence that Saephan was likely to escape if not swiftly apprehended. See 54 Wn. App. at 777. The Machado court recognized that the officers possibly could have kept the apartment under surveillance while they sought a warrant. Id. However, the court found that waiting for a warrant was impractical due to the early morning hour and shortage of police manpower. Id.

The record before us does not support the same rationales. But, Officers Beseler and Bourns were confronted with an ongoing threat of harm. They reasonably believed that both the source of the threat and its targets were inside the home. They responded to this threat of harm as part of their ongoing field investigation—not as a preplanned operation. Thus, Officers Beseler and Bourns "properly chose to defuse the potentially dangerous situation by entering immediately," rather than waiting for a warrant. See id. Under these conditions, we conclude that exigent circumstances justified the officers' entry.

II.    Findings and Conclusions

Saephan asserts that the trial court failed to enter written findings of fact and conclusions of law after his suppression hearing.

CrR 3.6 provides that the trial court shall enter written findings of fact and conclusions of law at the conclusion of an evidentiary hearing. CrR 3.6(b). The purpose of requiring written findings and conclusions is to ensure efficient and accurate appellate review. State v. Cannon, 130 Wn.2d 313, 329, 922 P.2d 1293 (1996). "Although the practice of submitting late findings and conclusions is disfavored, they may be 'submitted and entered even while an appeal is pending' if the defendant is not prejudiced by the belated entry of findings." Id. at 329-30 (quoting State v. McGary, 37 Wn. App. 856, 861, 683 P.2d 1125 (1984)).

When Saephan filed his opening brief, the trial court had not yet entered its findings and conclusions. However, the court subsequently entered findings and conclusions on April 18, 2014. Saephan did not file a reply brief.

11

The State asserts that Saephan was not prejudiced by the late filing. Indeed, Saephan does not argue prejudice. We find no error in the delayed entry of the findings and conclusions.

We affirm.

_Appelwick, J._

WE CONCUR:

_Spearman, C.J._          _Becker, J._