Hsien I. PENG, Plaintiff–Appellant,

v.

MEI CHIN PENGHU; Jonathan Hu; S. Gage, Los Angeles County Deputy, Badge No. 406857, sued individually, Defendants–Appellees.

No. 02–55852.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 2003.

Filed July 10, 2003.

Frank A. Weiser, Law Offices of Frank A. Weiser, Los Angeles, CA, for the plaintiff-appellant.

Max C. Chiang, Law Offices of Max C. Chiang, Cerritos, CA, and Toni Rae Bruno, Dwyer, Daly, Brotzen & Bruno, Los Angeles, CA, for the defendants-appellees.

Before: MARY M. SCHROEDER, Chief Judge, SUSAN P. GRABER, Circuit Judge, and JAMES K. SINGLETON, District Judge.*

---

## OPINION

SINGLETON District Judge.

Hsien I. Peng appeals the district court's dismissal of his civil rights action brought pursuant to 42 U.S.C. § 1983.[1]

Peng was arrested for robbery by Los Angeles County Deputy Scott Gage, based on allegations that Peng forcibly took land title documents from his sister, Mei Chin Peng Hu ("Mei Hu"). Peng was released when the district attorney's office determined that there was insufficient evidence to press charges. Peng claims that his Fourth Amendment right to be free from an unlawful seizure was violated because Gage lacked probable cause to arrest him.[2] Peng alleges that his sister, Mei Hu, and her son, Jonathan Hu, also violated his Fourth Amendment right to be free of unlawful seizure because their allegedly false statements to Gage caused Peng's arrest. Thus, argues Peng, they were essentially state actors for the purposes of § 1983. Peng appeals the two district court orders that dismissed his claims. The first order granted Deputy Gage qualified immunity from suit. The second order held that the court did not have subject matter jurisdiction over the remaining claims against Mei Hu and Jonathan Hu because they were not state actors within the meaning of § 1983. The district court also declined to exercise supplemental jur-

---

* The Honorable James K. Singleton, United States District Judge for the District of Alaska, sitting by designation.

1. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983 (West 2003).

2. Peng also alleged an equal protection violation in his complaint, but he has not pursued this claim on appeal.

isdiction over the state law claim against Mei Hu and Jonathan Hu alleging false arrest and imprisonment. Thus, the district court dismissed all of Peng's claims. We affirm.

## I. STANDARD OF REVIEW

 The order granting Gage qualified immunity was a summary judgment made pursuant to Federal Rule of Civil Procedure 56. The court dismissed the claims against Mei Hu and Jonathan Hu for lack of subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). A grant of summary judgment is reviewed de novo. *Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002). Dismissal for lack of subject matter jurisdiction is also reviewed de novo. *McGraw v. United States*, 281 F.3d 997, 1001 (9th Cir.) *amended by* 298 F.3d 754 (9th Cir.2002).

## II. BACKGROUND

During the evening of May 2, 2000, Deputy Gage responded to a "family disturbance" dispatch. It appears that the disturbance arose out of a family meeting held to resolve a dispute over land title documents that Mei Hu possessed, but which her father, Chieh Tsai Peng ("C.Peng"), asserted the right to possess. Mei Hu's brother Peng was present at the meeting to mediate, and the meeting took place at the house of Mei Hu and Peng's sister. At some point, Peng obtained the documents from Mei Hu. Whether he used force to obtain them is disputed.

Peng asserts in his complaint that Mei Hu gave him the documents, and when the dispute could not be resolved, Mei Hu demanded their return but Peng refused.[3] It is undisputed that, after obtaining the documents, Peng left the house and came

back twenty minutes later without the documents and refused to return them to Mei Hu. Mei Hu's son, Jonathan Hu, was called and told that his uncle Peng had become violent. Consequently, Jonathan Hu went to the house where the altercation had occurred and instructed his sister to call the police.

Deputy Gage responded to the call. While on the scene, Gage interviewed Mei Hu regarding the incident. Because Mei Hu only speaks Mandarin Chinese, Jonathan Hu translated for Gage. It is undisputed, as noted by the district court, that Mei Hu, via Jonathan Hu, told Gage the following:

- Mei Hu came to the location to meet Peng about a land dispute.

- Peng approached Mei Hu and asked if he could have the documents she possessed so he could photocopy them.

- When Mei Hu refused to hand Peng the documents, he reached out and grabbed the documents from Mei Hu's right hand and refused to let go, engaging in a tug of war with Mei Hu over the documents.

- Peng then raised his right fist as though he was going to strike Mei Hu in the face.

- Fearing for her safety, Mei Hu released the documents.

- After taking the documents from Mei Hu, Peng left the residence and returned approximately twenty minutes later.

- Once he returned, Peng refused to give the documents back to Mei Hu.

- Shortly thereafter, the police were called.

---

**3.** In his police report, Gage stated that Peng told him this version of the incident when he first arrived on the scene. Peng, however, disputes that he said this to Gage and instead contends that Gage never let him tell his side of the story.

After taking Mei Hu's statement, Gage then interviewed two witnesses who were present during the altercation. The identity and statements of these two witnesses are disputed. In his police report, Gage lists the witnesses as two of Peng's brothers. By contrast, Jonathan Hu asserts that the two interviewed were his grandfather, C. Peng, and his uncle, Mr. Chi. It is undisputed, however, that neither person interviewed spoke English and that Gage had to rely on Jonathan Hu's interpretation to take their statements. According to Gage, the two witnesses interviewed stated that Peng grabbed the documents from Mei Hu, but they could not recall whether he raised a fist at her. Jonathan Hu asserts that the two witnesses did see Peng raise a fist at Mei Hu and testified that he translated these statements to Gage. C. Peng has submitted a declaration that neither he nor Mr. Chi ever said that Peng grabbed the documents or raised a fist. But, as the district court noted, it is uncontroverted that Jonathan Hu told Gage that the witnesses saw Peng grab the documents from Mei Hu.

After interviewing Mei Hu and the two witnesses, Gage arrested Peng for robbery. Charges were never brought by the district attorney's office because it was determined that there was insufficient evidence. Peng subsequently brought this suit pursuant to § 1983 against Gage, Mei Hu, and Jonathan Hu. Gage moved for summary judgment, asserting that he is protected from suit by qualified immunity. The court held a hearing and then granted Gage's motion for summary judgment.

Following Gage's dismissal from the action, the district court issued an order to show cause whether it had subject matter jurisdiction over the § 1983 claim against Mei Hu and Jonathan Hu. Following briefing by the parties, the court determined that it lacked subject matter jurisdiction because Mei Hu and Jonathan Hu were not state actors. The court also declined to exercise supplemental jurisdiction over the state law claim against the Hus alleging false arrest and false imprisonment, and the entire action was thus dismissed. *See* 28 U.S.C. § 1367(b) (providing that where federal claims are resolved without trial, a district court has discretion to dismiss supplemental state claims to permit their resolution in state court).

## III. ANALYSIS

Peng contends that the district court erred when it dismissed his § 1983 claim against Gage, Mei Hu, and Jonathan Hu because there are disputed material facts precluding summary judgment and because the district court incorrectly applied the law. A review of the record establishes that, although there are several disputed facts, none of them is material to the dispositive legal issues. Thus, the district court did not err when it granted dismissal of Peng's claims.

### A. Adequacy of the Notice of Appeal

■ As an initial matter, Gage asserts that the notice of appeal was untimely and insufficient. The order dismissing Gage was entered on February 27, 2002. The notice of appeal was filed on May 10, 2002. Attached to the notice of appeal is a copy of the final order dismissing the remaining claims against the Hus that was filed by the court on April 11, 2002. Gage argues that the notice was not timely because it was filed more than thirty days after the order dismissing him was entered, and it was insufficient because it did not include a copy of the order that dismissed him.

Regarding the timeliness argument, Gage is correct that a notice of appeal generally must be filed within thirty days of the judgment or order appealed from. Fed. R.App. P. 4(a)(1)(A) (stating that "the

notice of appeal ... must be filed with the district clerk within 30 days after the judgment or order appealed from is entered"). When multiple claims or parties are involved, however, judgment may be entered as to fewer than all the claims and all the parties "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed.R.Civ.P. 54(b); *see also Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 923 (9th Cir.2001).

In this case, a Rule 54(b) determination was not made following the order granting Gage summary judgment. Nor was a final judgment ever entered on a separate document; not even after the final order dismissing the remaining claims was entered. *See* Fed.R.Civ.P. 58(a)(1) (providing that "[e]very judgment ... must be set forth on a separate document"); Fed.R.Civ.P. 79(a) (providing that "[a]ll ... judgments shall be entered chronologically in the civil docket ... [and][t]he entry of an order or judgment shall show the date the entry is made"). Under these circumstances, judgment is considered entered 150 days from the entry of the final order dismissing the remaining claims. Fed. R.App. P. 4(a)(7)(A)(ii). Here, the notice of appeal is timely because the final order dismissing all remaining claims was entered on April 11, 2002, a final judgment was never entered, and the notice of appeal was filed on

May 10, 2003.[4] Gage's timing argument fails.

■ Likewise, Gage's argument regarding Peng's failure to attach the order granting Gage qualified immunity to the notice of appeal is unpersuasive. Federal Rule of Appellate Procedure 3 provides that "[a]n appellant's failure to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for the court of appeals to act as it considers appropriate, including dismissing the appeal." Fed. R.App. P. 3(a)(2). We conclude that dismissal of the appeal is not appropriate on this basis.

**B. Qualified Immunity**

■ Next, we address whether Gage was properly granted qualified immunity. The district court concluded that, "under the totality of the circumstances, Deputy Gage's belief that probable cause existed to arrest Peng for robbery was objectively reasonable." The court reasoned that Mei Hu provided sufficient detail regarding the incident to support a reasonable belief that Peng had used a threat of force to obtain the documents. The court was further convinced that probable cause existed because of the corroboration Gage received from the two witnesses he interviewed, who stated that Peng grabbed the documents from Mei Hu against her will.

---

**4.** We further note that an appellant need not wait until the end of the 150-day time period to file a notice of appeal; it may be filed within 150 days of the final order, without prejudice to the appeal. *See* Fed. R.App. P. 4(a)(7)(B) ("A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58(a)(1) does not affect the validity of an appeal from that judgment or order."). Federal Rule of Civil Procedure 58 and Federal Rule of Appellate Procedure 4(a) were amended in 2002 to conform with the holding in

*Bankers Trust Co. v. Mallis,* 435 U.S. 381, 387–88, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978) (per curiam), which held that the separate-document requirement can be waived. *See* Fed. R.App. P. 4(a)(7) (2002 Amendments); Fed.R.Civ.P. 58 (2002 Amendments). The amendments further clarify that the decision to waive the entry of a separate document is for the appellant alone so that an appellee cannot object and require the appellant to go back to district court to get a final judgment entered. *Id.*

A finding of qualified immunity depends on a two-part inquiry by the court. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* Second, "if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id.* However, if the allegations taken as true do not establish a violation, "there is no necessity for further inquiries." *Id.* The United States Supreme Court has noted that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam) (citation omitted).

Peng alleges that Gage violated his Fourth Amendment right to be free of an unlawful seizure because Gage arrested him without probable cause. Gage arrested Peng for robbery. In California, where the arrest occurred, "robbery" is defined as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal.Penal Code § 211 (West 2003). A police officer may make a warrantless arrest when the "officer has probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed." *Id.* § 836(a)(3) (West 2003).

Under California law, an officer has probable cause for a warrantless arrest "if the facts known to him would lead a [person] of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." *People v. Adams*, 175 Cal.App.3d 855, 221 Cal.Rptr. 298, 301 (1985) (citation and quotations omitted); *see also People v. Lewis*, 109 Cal.App.3d 599, 167 Cal.Rptr. 326, 330 (1980). This is very similar to the Fourth Amendment test applied by this court, which provides that "[p]robable cause exists when, under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that[the suspect] had committed a crime." *United States v. Buckner*, 179 F.3d 834, 837 (9th Cir.1999) (citations and quotations omitted).

Peng advances the following five arguments on appeal attacking application of qualified immunity to Gage. First, Peng argues that a civil dispute over ownership of land title documents cannot form the basis for probable cause. *See, e.g., Stevens v. Rose*, 298 F.3d 880, 884 (9th Cir.2002) (holding that an arrest to retrieve car keys where ownership of the car was in dispute was not supported by probable cause); *Allen v. City of Portland*, 73 F.3d 232, 237 (9th Cir.1995) (holding that a dispute regarding payment of a restaurant bill does not give rise to probable cause to arrest); *Kennedy v. L.A. Police Dep't*, 901 F.2d 702, 706 (9th Cir.1989) (holding that possessing property of another for the purpose of security on a debt does not give rise to probable cause to arrest). Second, Peng asserts that there is a material factual dispute regarding whether he used force to obtain the documents so that summary judgment is precluded. Third, Peng asserts that probable cause did not exist because an officer is not allowed to rely solely on the allegations of a victim of a crime without making an independent investigation of the allegations. *See, e.g., Arpin*, 261 F.3d at 925 ("In establishing probable cause, officers may not solely rely

on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses."). Fourth, Peng challenges Gage's veracity and accuses him of fabricating evidence. Fifth, and finally, Peng argues that the question whether probable cause existed at the time of Peng's arrest is for a jury, and not the court, to decide. Given the totality of the circumstances facing Gage at the moment of the arrest, we find these arguments unpersuasive.

Addressing Peng's first contention, we disagree that the allegations underlying Peng's arrest were civil in nature. Peng correctly notes that this court has been very suspicious of efforts to involve the police and the power of arrest in collecting debts and enforcing purely civil obligations. Such actions take on the appearance of extortion.[5] The reasonable effort to prevent the use of the police to collect disputed debts should not, however, cause us to inhibit the police in preventing violence.

It is important to recognize that the dispatch in this case was for a domestic dispute. As the California Court of Appeals recognized in *People v. Higgins*, 26 Cal.App.4th 247, 31 Cal.Rptr.2d 516, 518 (1994), domestic disputes present a responding officer with situations involving great potential danger to occupants of the household. *Id.* at 518. If the officer hesitates to act, his hesitancy may lead to the occurrence of otherwise preventable violence. *Id.* at 518–19. The *Higgins* court agreed with the decision by the Washington State Court of Appeals in *State v. Raines*, 55 Wash.App. 459, 778 P.2d 538 (1989), when it noted that police officers responding to a domestic violence report

have a duty to ensure the present and continued safety and well-being of the occupants of the residence where the alleged violence took place. *Higgins*, 31 Cal. Rptr.2d at 519 (quoting *Raines*, 778 P.2d at 542–43). These cases are distinguishable from most of the extortion cases, in which there is not a realistic risk of violence.

For example, in *Stevens*, 298 F.3d at 882, cited by Peng, a district attorney was trying to mediate a dispute over ownership of a car between Stevens and his wife. Stevens grabbed the title to the car from the DA and tried to eat it. The DA grabbed the title back and Stevens left after being ordered to do so. *Id.* When the DA realized that Stevens may have had the keys to the car, an officer was sent after him to retrieve them. When Stevens refused to stop and talk, the officer arrested him. This court held that there was not probable cause to arrest because it was solely a civil matter. *Id.* at 883–84. It was never alleged in *Stevens* that there was a risk of violence or that violence had occurred.

Having carefully considered the record, we are satisfied that this case is nearer to a case of alleged domestic violence than it is to the extortion cases upon which Peng relies. It is true that Peng and Mei Hu are sister and brother and not domestic partners, and that neither lived in the home where the dispute took place. The undisputed evidence, however, establishes that the family members were upset and angry, and given the language barriers between Gage and the witnesses, we are satisfied that Gage had probable cause to arrest Peng. As the Supreme Court of California has noted in a related context: " 'the business of policemen and firemen is

---

5. Extortion at common law was the use of official position or authority to command under color of office a fee or benefit to which the person making the demand was not entitled. *See* Rollin M. Perkins & Ronald N. Boyce, Criminal Law 442–48 (3d ed.1982).

*to act,* not to speculate or meditate on whether the report [of recent crime] is correct. People could well die in emergencies if the police tried to act with the calm deliberation associated with the judicial process.'" *Tamborino v. Superior Court,* 41 Cal.3d 919, 226 Cal.Rptr. 868, 719 P.2d 242, 245 n. 2 (1986) (quoting *Wayne v. United States,* 318 F.2d 205, 212 (D.C.Cir. 1963) (Burger, J. concurring)).

Peng's second argument is that, because factual disputes exist, summary judgment was inappropriate on the issue of qualified immunity. There are several factual disputes, including whether a threat of force was in fact used by Peng to obtain the documents from Mei Hu. This dispute is not, however, material to what Gage knew at the time of arrest. "Fourth Amendment issues[ ] are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier,* 533 U.S. at 207, 121 S.Ct. 2151. At the time of the arrest, Gage had interviewed Mei Hu via Jonathan Hu, who was acting as interpreter. At that time, Mei Hu gave a detailed account of the incident, which—so far as Gage knew—was corroborated, since he relied on Jonathan Hu's translation of the two witnesses' testimony.

Another factual dispute exists because Gage has stated that he spoke to Peng when he first arrived at the scene and was told by Peng that Mei Hu willingly gave him the documents. This contradicts Mei Hu's allegations that Peng obtained the documents by threat of force; specifically, by raising a fist at her.[6] Nevertheless, an officer who is investigating a domestic dispute must make snap decisions regarding whether there is probable cause to arrest. Where, as here, the victim alleges that

force, or a threat of force, existed, it is important for officers to err on the side of safety for the victim in order to prevent further violence and allow the parties to cool down.

■ Third, Peng asserts that Gage did not have probable cause at the time of arrest because he relied solely on Mei Hu's allegations. This court has said that "officers may not solely rely on the claim of a citizen witness that he was a victim of a crime, but must independently investigate the basis of the witness' knowledge or interview other witnesses." *Arpin,* 261 F.3d at 925 (citing *Fuller v. M.G. Jewelry,* 950 F.2d 1437, 1444 (9th Cir.1991)). A sufficient basis of knowledge is established if the victim provides " 'facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator.'" *Fuller,* 950 F.2d at 1444 (quoting *People v. Ramey,* 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333, 1336 (1976)). Here, Mei Hu provided sufficiently detailed facts regarding the incident to support a finding that probable cause to arrest existed.

Nevertheless, after interviewing Mei Hu, Gage also interviewed two more witnesses who were present during the altercation, again with the help of Jonathan Hu as an interpreter. The identity of these two witnesses is disputed, as is what they actually told Gage. In his report, Gage states that the witnesses are Peng's brothers. By contrast, Jonathan Hu stated in his deposition that the witnesses were his grandfather, C. Peng, and his uncle, Mr. Chi. It is undisputed, however, that the two people interviewed by Gage did not speak English.

6. Because Peng contends that he did not make this statement to Gage, taking this assertion as true—because Peng is the nonmoving party—Mei Hu's allegations at the time of the arrest are uncontroverted.

■ Regarding what was said by the witnesses, Jonathan Hu, acting as interpreter, told Gage that the witnesses corroborated the raised-fist allegation, as well as the grabbing of the documents. In his report, Gage stated only that the witnesses could not recall whether or not Peng raised his fist, but that they saw Peng grab the documents from Mei Hu. Peng has submitted a declaration by C. Peng that neither he nor Mr. Chi ever told anyone anything about what happened. As the district court noted, Peng has not cast doubt on the fact that, prior to Peng's arrest, Jonathan Hu, acting as interpreter, told Gage that the two witnesses saw Peng grab the documents from Mei Hu. Peng has cast doubt on the identity of the witnesses and the veracity of Jonathan Hu, but Gage could not have known this at the time of the arrest.[7] We are satisfied that Gage made a reasonable investigation under the circumstances before he arrested Peng. *See Fuller,* 950 F.2d at 1442–44 (holding that "police officers ha[ve] a duty to conduct an investigation into the basis of the witness' report"). We conclude that the presence of a factual dispute regarding a victim's complaint at the scene of an alleged domestic disturbance does not defeat probable cause if: 1) the victim's statements are sufficiently definite to establish that a crime has been committed; and 2) the victim's complaint is corroborated by either the surrounding circumstances or other witnesses.

Fourth, Peng attacks Gage's veracity. Peng notes inconsistencies in the sequence of events provided by Gage's testimony and police report, and Peng's recollection of events. None of these inconsistencies, however, is material to a finding of probable cause. Peng notes that Gage says he interviewed Peng when he first arrived on the scene, but Peng contends that he did not. Peng also asserts that Gage has inconsistently testified that Peng told him the documents were at a friend's house before he was arrested, while in his declaration Gage asserts that Peng told him this after he was arrested, while he was being placed in the patrol car. Another inconsistency, asserts Peng, is that Gage's incident report states that the victim was adamant that Peng be arrested, and yet Mei Hu and Jonathan Hu have testified that they made no such request. These are, however, inconsistencies in incidental facts and are to be expected where different people are called upon to remember startling events. They are not material and they do not establish that Gage fabricated evidence, as Peng has asserted.

■ Peng's final argument is that, if there is more than one reasonable inference from the undisputed facts regarding the existence of probable cause, it is a question for the jury and not the court. Peng cites *Kennedy v. Los Angeles Police Department,* 901 F.2d 702 (9th Cir.1989), for support of this proposition. On this point, *Kennedy* was called into question by *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir.1993), which held that after *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991),

> whether a reasonable officer could have believed probable cause ... existed to justify a search or an arrest is "an essentially legal question" that should be determined by the district court at the earliest possible point in the litigation.

(Citation omitted). Thus, where the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts, it is appropriate for this court to

---

**7.** It is not clear from the record exactly how many family members and friends were present at the place where the altercation occurred, or their identities.

decide whether probable cause existed at the time Gage arrested Peng. Because probable cause existed, there is no violation of Peng's Fourth Amendment right, and no further inquiry is necessary.

■ If we had doubts about probable cause, we would still reach the same conclusion because, as this court said in *Fuller*, "[e]ven absent probable cause, qualified immunity is available if a reasonable police officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information the searching officers possessed." *Fuller*, 950 F.2d at 1443 (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). If Gage was mistaken about the existence of probable cause to arrest Peng, his mistake was objectively reasonable, and he was entitled to qualified immunity.

### C. Subject Matter Jurisdiction

■ Peng's second claim on appeal challenges the dismissal of the claims against Mei Hu and Jonathan Hu for lack of subject matter jurisdiction. The court held that Mei Hu and Jonathan Hu were not state actors for purposes of § 1983 because there was no concerted action between them and Gage to have Peng arrested. Although generally inapplicable to private parties, a § 1983 claim can lie against a private party when, as relevant here, " 'he is a willful participant in joint action with the State or its agents.' " *Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir.2003) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980)).

In the case at hand, the alleged violation of Peng's rights was his arrest, which was done by Gage in his capacity as a police officer. Clearly, the arrest was a state action. Thus, if Mei Hu and Jonathan Hu are liable pursuant to § 1983, it must be because they acted jointly with Gage. As the United States Supreme Court noted in *Soldal v. Cook County*, 506 U.S. 56, 60 n. 6, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), if the police condone activities by private parties that they know to be illegal, there exists "sufficient evidence of conspiracy between the private parties and the officer to foreclose summary judgment" for the private parties. In *Soldal*, the police refused to allow the owner of a mobile home to oppose an eviction by the owner of the park where the home was located, even though the police knew the eviction was illegal. The mobile home owner brought a § 1983 action against the park owner and police. The park owner was held by the circuit court to be a state actor based on his conspiracy with the police to illegally evict the mobile home owner. *Id.* at 58–9, 113 S.Ct. 538. This holding was not disturbed on appeal to the Supreme Court. *Id.* at 60 n. 6, 113 S.Ct. 538.

Here, there is no evidence that Gage knew that Peng was innocent of robbery. The trial court correctly concluded that a finding of concerted action could not be found on this record. *See Howerton v. Gabica*, 708 F.2d 380, 385 (9th Cir.1983) (holding that a single request that the police perform their peace-keeping responsibilities may be insufficient to create a joint undertaking); *accord King v. Massarweh*, 782 F.2d 825, 828–29 (9th Cir. 1986). This court in *Howerton* noted, and in *King* held, that a single request to the police, without more, was not sufficient to establish a claim against a private actor pursuant to § 1983. *See Howerton*, 708 F.2d at 385; *King*, 782 F.2d at 829. Accordingly, the § 1983 claim against Mei Hu and Jonathan Hu was properly dismissed.

### IV. CONCLUSION

For the foregoing reasons, the decision of the district court granting Gage quali-

fied immunity and the district court's decision to dismiss the claims against Mei Hu and Jonathan Hu for lack of subject matter jurisdiction are affirmed.

AFFIRMED.