**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARGARET JOHN,
　　　　　　*Plaintiff-Appellee,*

　　　　　　v.

CITY OF EL MONTE,
　　　　　　*Defendant,*

　　　　　　and

ERIC YOUNGQUIST,
　　　　　　*Defendant-Appellant.*

No. 05-56125

D.C. No.
CV-04-
00048(AHM)

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
June 7, 2007—Pasadena, California

Filed September 26, 2007
Amended February 5, 2008

Before: Alex Kozinski, Chief Judge, Daniel M. Friedman,*
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Friedman

---

*Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

## COUNSEL

Peter J. Ferguson, Ferguson, Praet & Sherman, Santa Ana, California, and Timothy T. Coates, Greines, Martin, Stein &

Richland LLP, Los Angeles, California, for appellant Eric Youngquist.

John Burton, The Law Offices of John Burton, Pasadena, California, and William J. Osborne, Osborne & Associates, Sherman Oaks, California, for appellee Margaret John.

## ORDER

The opinion filed on September 26, 2007, slip op. at 13251, is amended as follows:

Slip op. at 13261, Lines 8-16

> Delete <Likewise, in *Torchinsky v. Siwinski*, 942 F.2d 257 (9th Cir. 1991), we found that, because the officer knew the victim had been assaulted, the officer had probable cause to make an arrest based on the "victim's reliable identification of his attacker." 942 F.2d at 262 (citation omitted); *see also id.* ("Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim.").>

Slip op. at 13262, Line 6

> Insert <Even if a reasonable jury might conclude the officer lacked probable cause, the arrest was not contrary to any clearly established law, so the officer was entitled to qualified immunity from a jury trial.> after <could have reached the opposite conclusion.>

The petition for rehearing and rehearing en banc is otherwise denied. *See* Fed. R. App. P. 35; Fed. R. App. P. 40. No further petitions for rehearing or rehearing en banc will be accepted.

**OPINION**

FRIEDMAN, Circuit Judge:

This appeal challenges a district court's denial of summary judgment dismissing a damage suit by a female school teacher against a police officer for improperly arresting her for allegedly sexually molesting a ten-year-old female student. The district court held that the officer did not have probable cause for the arrest and was not entitled to qualified immunity for his conduct. We hold, however, that the officer had probable cause for the arrest and therefore reverse the denial of summary judgment.

I

The basic facts, undisputed unless otherwise indicated, may be summarized as follows:

The appellee, Margaret John, a fifth-grade public school teacher, intercepted notes written by her ten-year-old student Ashley to Ashley's friend. In the notes Ashley stated that she "hop[ed] Ms. John dies today like poisoning her or something," and that John was "a fucken [sic] perv" and a "lesbian bitch." Five days later, after John had shown those notes to the school principal, the latter requested a police investigation.

The appellant, Eric Youngquist, a police officer with ten years experience on the city policy force, conducted the investigation. Youngquist had had extensive training, including courses in child abuse (which included interviewing suspects) and advanced interviewing techniques.

When Youngquist interviewed Ashley at the school, she was unresponsive. Youngquist asked her whether she would prefer that the discussion take place at the police station. When she indicated that she would, he took her there and con-

tinued the interview. According to Youngquist's declaration, Ashley then told the following story:

A few weeks earlier, John had imposed detention on her and six other students, and had required them to stay after class. After all the other students (whom she could not identify) had left the room

Ms. John came up and stood behind her.

That without any words being spoken, Ms. John placed her right hand on her left shoulder area of her shirt and then moved her hand down and began caressing her left breast with her hand.

That Ms. John rubbed on the outside of her clothing in an upward and downward motion on her left breast.

After rubbing her breast area she began moving her hand down near her vaginal area on the outside of her pants.

She stated that Ms. John left her hand on the outside of her crouch [sic] area adjacent to her vagina on the outside of her clothing. Her hand remained there for approximately one minute.

Youngquist further stated:

Prior to her description of the touching, she became very quiet. She stopped communicating momentarily. She provided short word descriptions. This is consistent behavior of a victim of sexual abuse. I would then have her point, for example, to the area where she just described having been touched. She would then point to the area where she just described. This was done for pur-

poses of looking for deception. A deception might be shown if a description and then a physical act of pointing to another area was given.

I would continue to validate the information by providing her false or exaggerated facts into her descriptions of the incident. Each time she would correct me and would stay consistent with her original description. This was done to allow her to embellish or fabricate the facts regarding the events. She would not allow it.

I believed her to be a mature 10 year old. Her description of the events, her consistency and accuracy without any detection of exaggeration, fabrication, or deception was paramount for me to form the belief that she was a genuine victim.

Likewise, the notes themselves provide independent corroborating evidence that the act occurred. For example, the notes call the plaintiff a "lesbian" and "perv." (assuming pervert). These words support the activity she now describes. They were written within a short time after the incident. They were written (in secret) to a friend, not with the intent to cause "trouble" for Ms. John. Necessarily, the notes, or words taken from the notes support the belief of the truth of her account. In other words, it was highly probable that the described activity occurred.

Based upon all the information I had received, I believed I had legal, sufficient and reliable information to support probable cause to arrest Ms. John for California *Penal Code* § 288(a)(c)(Lewd and Lascivious Acts with a child under the Age of 14 Years).

Following this interview, Youngquist attempted to interview John at the school.

Prior to the interview John had a telephone conversation with a lawyer, who also spoke to Youngquist. In her declaration, John stated that her attorney

> told me that if I choose to speak with the police, I should at least ask the police to make a record that I requested an attorney.

> When I hung up the phone and returned to the conference room with Officer Youngquist, he asked me what I decided to do, and I told him I wanted him to make a record of my request to have an attorney present. However, before I could also inform him of my decision to co-operate, he said that because I had asked for an attorney, he could not question me, and had "no choice" but to arrest me. Obviously, I was shocked and greatly dismayed.

Youngquist then arrested John, handcuffed her, and led her handcuffed out of the school. She was confined for 36 hours, and released after the district attorney declined to prosecute her.

John then filed the present damage suit in the United States District Court for the Central District of California under 42 U.S.C. § 1983, against Youngquist, the city and other city officials. She contended that Youngquist violated her constitutional rights by arresting her without probable cause.

The district court denied cross motions for summary judgment. It held that Youngquist had not established probable cause for the arrest because the evidence "could lead a fair-minded jury to conclude that Officer Youngquist did not act reasonably." *John v. City of El Monte*, No. CV04-0048AHM(BDKx), slip op. at 17 (C.D. Cal. July 6, 2005)("Slip op."). The court further held that Youngquist did not have qualified immunity because Ninth Circuit precedent "would have put any reasonable officer on notice that he

could not rely solely on the police station interview of ten-year-old A.M. to establish probable cause to arrest plaintiff." *Id.* at 18.

## II

An order denying summary judgment ordinarily is not immediately appealable because it is interlocutory. *See Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001). Such orders denying qualified immunity, however, are appealable because that principle protects government officers not just from liability, but also from having to litigate the validity of their official actions. *Id.*

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court instructed that "[i]n a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence." "The first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question [is] whether the right was clearly established. . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* at 200-01. This court has recognized its obligation to make the bifurcated *Saucier* inquiry. *Meyers v. Redwood City*, 400 F.3d 765, 769-70 (9th Cir. 2005). Thus, before considering qualified immunity, we must first determine whether Youngquist had probable cause to arrest John. Since we hold that he did, that ends the inquiry.

**[1]** "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). This court looks to "the totality of the circumstances known to the arrest-

ing officers, [to determine if] a prudent person would have concluded there was a fair probability that [the defendant] had committed a crime." *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986). Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes. *Lopez*, 482 F.3d at 1072.

**[2]** The determination whether there was probable cause is based upon the information the officer had at the time of making the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)("Whether probable cause exists depends on the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest"). It is essential to avoid hindsight analysis, *i.e.*, to consider additional facts that became known only after the arrest was made. *Cf. Hansen* v. *Black*, 885 F.2d 642, 645 (9th Cir. 1989)(stating that the "reasonableness inquiry [in an excessive force claim] is 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of 'hindsight' ' ")(citation omitted).

**[3]** Youngquist did not just accept Ashley's allegations of John's misconduct against her. He properly drew upon his experience and his special training in dealing with sexual abuse of children and advanced interviewing in evaluating her story. *See Hart v. Parks*, 450 F.3d 1059, 1067 (9th Cir. 2006) ("[I]t is settled law that officers may 'draw on their own inferences from and deductions about the cumulative information available to them that might well elude an untrained person.' ") (quoting *United States v. Hernandez*, 313 F.3d 1206, 1210 (9th Cir. 2002)).

Youngquist tested Ashley's veracity and reliability in various ways which, in his experienced judgment, indicated to him that she was telling the truth. As Youngquist stated, her statements of what happened were "short word descriptions.

This is consistent behavior of a victim of sexual abuse." She indicated the areas she stated had been touched by pointing to them. When Youngquist provided "false or exaggerated facts into her descriptions of the incident[,] [e]ach time she would correct me and would stay consistent with her original description. This was done to allow her to embellish or fabricate the facts regarding the events. She would not allow it." Youngquist further stated that Ashley's "notes themselves provide independent corroborating evidence that the act occurred. For example, the notes call the plaintiff a 'lesbian' and 'perv.' (assuming pervert). These words support the activity she now describes. They were written within a short time after the incident."

**[5]** As Youngquist summarized the situation, Ashley's "description of the events, her consistency and accuracy without any detection of exaggeration, fabrication, or deception was paramount for me to form the belief that she was a genuine victim."

**[6]** In sum, Youngquist had probable cause to arrest John because "under the totality of the circumstances known to the arresting officer[ ], a prudent person could have concluded that there was a fair probability that [she] had committed a crime." *Peng v. Penghu*, 335 F.3d 970, 976 (9th Cir. 2003)(quotation omitted), *cert. denied*, 540 U.S. 1218 (2004).

The existence of probable cause necessarily turns upon the particular facts of the individual case, and prior decisions generally are of little help in deciding a specific case. We know of no case that fairly can be said to control the present one. Our precedents, however, are consistent with our conclusion here.

For example, in *Peng*, we concluded that because the alleged victim provided sufficiently detailed facts regarding the incident, her allegations alone sufficed to establish probable cause for the arrest. 335 F.3d at 978. *Arpin v. Santa Clara*

*Valley Transportation*, 261 F.3d 912 (9th Cir. 2001), is not inconsistent. There, we concluded that because the officers had based their arrest solely on an unexamined charge by a bus driver that a rider had assaulted him and had done no further investigation, they did not have probable cause. *Arpin*, 261 F.3d at 925. Here, Youngquist probed Ashley's allegations thoroughly prior to arresting John and did not base the arrest solely on an "unexamined charge."

**[7]** The probable cause inquiry arises in this case in the context of the denial of Youngquist's motion for summary judgment. In reviewing that action, all reasonable inferences must be drawn in favor of the non-movant. *U.S. ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1144 (9th Cir. 2004). On the other hand, the movant's uncontradicted factual allegations ordinarily are accepted. *See e.g.*, *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952-53 (9th Cir. 1978). In this case, John has not disputed Youngquist's factual statements explaining why he accepted Ashley's statements about John's alleged sexual misconduct against her. Based on these statements and the supporting evidence of Ashley's notes we have discussed above, we have concluded that Youngquist had probable cause to believe that John had committed the alleged offense against Ashley. In the context of the probable cause inquiry, we cannot say that on this evidence, a reasonable jury could have reached the opposite conclusion. Even if a reasonable jury might conclude the officer lacked probable cause, the arrest was not contrary to any clearly established law, so the officer was entitled to qualified immunity from a jury trial.

The rationale of the district court's denial of summary judgment for Youngquist was that in the circumstances here he had a duty to investigate further before arresting John. The court stated: "Here, a jury could find that under these circumstances he was not reasonable. He relied solely on information he pried out of an indisputably troubled and very young victim, his view that her letters corroborated her accusation, his

assessment of her demeanor and what he claims was the plaintiff's refusal to undergo questioning. But that last factor - whether plaintiff was willing to be interviewed - is disputed; if the jury believes plaintiff, then it would find that she was prepared to undergo questioning and was prevented from doing so by Youngquist himself, by virtue of his possibly petulant, sudden arrest." Slip Op. at 16 (footnotes omitted). For the reasons we have given, however, we disagree.

We do not minimize the serious effect this unfortunate incident must have had upon John. She had been a teacher for thirty years, was highly regarded and had an unblemished record. To be escorted by the police out of the school in handcuffs and confined for 36 hours must have had a devastating impact upon her and upon her professional and personal reputation.

Moreover, Youngquist appears to have acted with unseemly haste in arresting her. Had he investigated the matter further before doing so, he might not have taken that action at all. His stated reason for arresting her at that time—to prevent her from engaging in similar misconduct against other students—is unconvincing, because, in his presence, John had been placed on administrative leave when he informed the school authorities of the investigation. Indeed, John's statement about what happened immediately before her arrest—which we accept for summary judgment purposes—suggests that Youngquist's arrest of her at that time may have been prompted by her stated wish to have a lawyer present during the interview.

**[8]** That being said, however, the probable cause inquiry is an objective one: whether the information Youngquist had when he made the arrest could have led a reasonable officer to believe that John had committed an offense against Ashley. For the reasons given, we answer that question affirmatively.

## CONCLUSION

The judgment of the district court denying Youngquist's motion for summary judgment based on probable cause is reversed and the case is remanded to that court for further proceedings consistent with this opinion.

**REVERSED and REMANDED**