NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 17 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TIFFANY BARRAZA, | No. 17-55743 |
| Plaintiff-Appellant, | |
| v. | D.C. No. 5:16-cv-01390-BRO-PJW |
| DEPUTY JONATHAN BODNAR, DEPUTY RAUL RODRIGUEZ, COUNTY OF RIVERSIDE, AND RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, | MEMORANDUM* |
| Defendants-Appellees | |

Appeal from the United States District Court
for the Central District of California
Beverly Reid O'Connell, District Judge, Presiding

Submitted October 11, 2018**
Pasadena, California

Before: WATFORD and OWENS, Circuit Judges, and PRESNELL,*** District Judge.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Gregory A. Presnell, United States District Judge for the Middle District of Florida, sitting by designation.

**I.**

On July 1, 2014, two deputies with the Riverside County Sheriff's Department—Jonathan Bodnar ("Bodnar") and Raul Rodriguez ("Rodriguez")—travelled to the residence of Appellant Tiffany Barraza ("Barraza") to investigate an abused or deceased dog report ("Report"). During their investigation, Bodnar and Rodriguez ("Deputies") located the deceased dog ("Mulan") in Barraza's gated backyard, and they interviewed the next-door neighbor ("Neighbor") who had made the Report. Bodnar also interviewed Barraza's boyfriend Cesar Castillo ("Castillo") and arrested him for felony animal cruelty. Subsequently, Barraza arrived at the residence, and Bodnar interviewed and arrested her as well ("Arrest").

Alleging that the Arrest violated her constitutional rights, Barraza filed suit against the Deputies under 42 U.S.C. § 1983.[1]  The United States District Court for the Central District of California granted the Deputies' Summary Judgment Motion, holding that they were entitled to qualified immunity because they had probable cause for the Arrest.  Barraza timely appealed. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[1] Barraza also sued the County of Riverside and Riverside County Sheriff's Department, but those claims are not at issue in this appeal.

**II.**

Qualified immunity in § 1983 actions is not a "mere defense" to liability, it is an immunity from suit that is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, the issue should be resolved at the summary judgment stage "if discovery fails to uncover evidence sufficient to create a genuine issue" concerning whether the movants' acts violated clearly established law. *Id*. at 526-27.

We review de novo the entry of summary judgment predicated on qualified immunity. *Sjurset v. Button*, 810 F.3d 609, 614 (9th Cir. 2015); *Burrell v. McIlroy*, 464 F.3d 853, 855 (9th Cir. 2006). Viewing the evidence in the light most favorable to the nonmoving party, we affirm "only when there is no genuine dispute as to any material fact" and the movants are entitled to judgment as a matter of law. *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018).

Two questions are at issue in a qualified immunity analysis: first, "whether the facts, taken in the light most favorable to" the nonmovant, show that an arrest was unlawful and violated the nonmovant's constitutional rights; and second, whether the law clearly established that the arrest "was unlawful." *See id*. (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). These questions may be addressed in any order, and if either question is resolved against the nonmovant, then the

officers are entitled to qualified immunity.[2] *See Rodis v. City & Cty. of San Francisco*, 558 F.3d 964, 968 (9th Cir. 2009).

With respect to the first question, a warrantless arrest violates the Fourth and Fourteenth Amendments if there is no "probable cause to believe that the suspect has committed or is committing an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime[.]").

Probable cause is an objective standard, which has been stated in different ways. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). In one iteration, probable cause to arrest "exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *Id*. Alternatively, probable cause exists when "under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the arrestee] had committed a crime." *Id*. (quoting *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986)). When there have been communications among officers at the scene of the arrest, the totality of the circumstances includes the officers' "collective knowledge." *See Blankenhorn v.*

---

[2] Since we answer the first question in Appellees' favor, we need not address the second question.

4

*City of Orange*, 485 F.3d 463, 472 (9th Cir. 2007) (quoting *United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990)).

Because probable cause turns on specific crimes, state law often is consulted to determine the elements of any pertinent offenses. *See DeFillippo*, 443 U.S. at 36. "Under California's animal cruelty laws, it is a crime to cause harm to an animal through an affirmative act or an act of neglect . . . ." *Animal Legal Def. Fund v. Cal. Exposition & State Fairs*, 192 Cal. Rptr. 3d 89, 90-91 (Cal. Ct. App. 2015); *see Martinez v. Robledo*, 147 Cal. Rptr. 3d 921, 927 (Cal. Ct. App. 2012) (observing that the owner of an animal "has an affirmative duty to properly care for [such] animal"). In pertinent part, § 597(b) of the California Penal Code ("Code") provides that:

> every person who . . . tortures, torments, deprives of necessary sustenance, drink, or shelter . . . or causes or procures any animal to be . . . tortured, tormented, deprived of necessary sustenance, drink, shelter, or to be . . . cruelly killed; and whoever, having the charge or custody of any animal, either as owner or otherwise, subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses an animal, or fails to provide the animal with proper food, drink, shelter or protection from the weather . . . is, for each offense, guilty of a crime punishable [as a felony].

Under § 597(b), animal cruelty may result from a single act or "the cumulative effect of repetitive acts of abuse." *See People v. Sanchez*, 114 Cal. Rptr. 2d 437, 445 (Cal. Ct. App. 2001). Criminal negligence is the

minimum culpable mental state for violation of § 597(b). *See People v. Brunette*, 124 Cal. Rptr. 3d 521, 533 (Cal. Ct. App. 2011); *see also People v. Riazati*, 129 Cal. Rptr. 3d 152, 163-64 (Cal. Ct. App. 2011) (explaining that § 597(b) "proscribes specified acts and omissions that are the product of grossly negligent conduct and are deemed to be acts of animal cruelty or neglect").

Here, probable cause for the Arrest was supported by "reasonably trustworthy information" available to the Deputies, including: (a) input from two Moreno Valley Animal Control investigators who conducted their own investigation of Mulan's death; (b) the hot day, extreme ground temperature, and absence of shade and water; and (c) Mulan's condition, including the muzzle, choke chain, and rigor mortis. *See People v. Chung*, 110 Cal. Rptr. 3d 253, 258-59 (Cal. Ct. App. 2010) (affirming denial of motion to suppress because officers had reasonable cause to enter premises based on a downstairs neighbor's report that she believed a dog was in danger and the sound of whimpering dog coming from condominium after resident denied owning a dog). Indeed, Appellant concedes that the evidence was "substantial" that Castillo "was appropriately arrested and prosecuted for animal cruelty."

Barraza argues that her Arrest was improperly based on her "mere propinquity" to Castillo. Not so. Probable cause to believe that Barraza—not just Castillo—violated the Code is further supported by the Neighbor's statements that

6

Mulan was tied up that morning, throughout the day, and on two days during the prior week, and statements made to Bodnar by Barraza and Castillo, which were reasonably viewed as contradictory and inculpatory to both suspects. *See Hart v. Parks*, 450 F.3d 1059, 1067 (9th Cir. 2006) (noting that law enforcement officers may draw inferences from the known facts and may perceive meaning in statements or conduct that others would consider innocent); *Peng v. Mei Chin Penghu*, 335 F.3d 970, 978-80 (9th Cir. 2003) (affirming summary judgment against plaintiff and rejecting argument that arresting officer's reliance on translated witness statements was improper).

Together, the information available to the Deputies at the time of the Arrest was sufficient to warrant a prudent person to believe that Barraza was also criminally responsible for abuse and unnecessary cruelty suffered by Mulan prior to her death. *See Luchtel v. Hagemann*, 623 F.3d 975, 979 (9th Cir. 2010) (affirming summary judgment against plaintiff on unlawful arrest claim given arresting officers' reliance on witness statements and plaintiff's comments); *Rodis*, 558 F.3d at 969 (noting that probable cause determinations are not subject to neat legal rules given the unique circumstances and varied probabilities at issue); *see also Gausvik v. Perez*, 345 F.3d 813, 817-18 (9th Cir. 2003) (finding probable cause existed despite "inaccurate" portions of arresting officer's affidavit).

Accordingly, the District Court was correct in concluding that the Arrest of

Barraza was lawful and that her constitutional rights were not violated.

**AFFIRMED.**