# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  51016-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| RAYLYN KADEEM NELSON, | |
| Appellant. | |

GLASGOW, J. — Without permission, Raylyn K. Nelson left the Clark County Jail Work Center, where he was confined for a felony drug conviction.  The next day, a Clark County detective found Nelson near his parents' house.  The detective and Nelson spoke briefly and the detective took Nelson back into custody.  Nelson was then charged and convicted for first degree escape.

Nelson appeals his conviction and sentence.  He argues that there was insufficient evidence to support his conviction for first degree escape.  Nelson also asserts that the trial court committed reversible error when it failed to enter written findings of fact and conclusions of law after admitting a statement he made to the detective under CrR 3.5.  He argues that the trial court erred in admitting the statement because, he contends, it was in response to custodial interrogation prior to a *Miranda*[1] warning.  Nelson finally asserts that a $250 jury demand fee, a criminal filing fee, and a DNA collection fee should be stricken from his judgment and sentence,

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

and the trial court should correct the judgment and sentence to reflect his total legal financial obligations.

We hold that there was sufficient evidence to support Nelson's conviction for first degree escape. We also hold that although the trial court erred in failing to enter written findings of fact and conclusions of law on its decision under CrR 3.5, the error is harmless. The trial court properly admitted Nelson's statement to the detective. With regard to Nelson's judgment and sentence, the inclusion of the jury demand fee was a scrivener's error.

We affirm but remand for the trial court to strike the jury demand fee, to determine the imposition of the criminal filing fee and the DNA collection fee in light of *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), and the 2018 legislative amendments to the legal financial obligation statutes, and to establish Nelson's total legal financial obligations.

FACTS

In 2017, Nelson was in custody at the Clark County Jail Work Center. Staff discovered that Nelson was missing from the center and, the next day, Clark County Sheriff's Detective Andrew Kennison found Nelson walking near his parents' home. The detective got out of his car and Nelson turned into an open field. Kennison shined a light on Nelson and told him to stop, but Nelson kept walking.

Kennison then shouted: "I know who you are. . . . You're Raylyn Nelson. You need to stop. You're under arrest." Verbatim Report of Proceedings (VRP) (Aug. 16, 2017) at 17-18. Nelson responded: "I'm not the guy you're looking for." VRP (Aug. 16, 2017) at 17. Kennison told Nelson that he had been looking at his photo all day, he knew who he was, and he needed to stop.

2

After Nelson stopped, Kennison handcuffed him. Once they got back to Kennison's vehicle, the detective read Nelson his *Miranda* warnings. Nelson remained silent after receiving the warnings.

The State charged Nelson with first degree escape under RCW 9A.76.110.

## I. CrR 3.5 HEARING

The trial court held a CrR 3.5 hearing to determine the admissibility of Nelson's statement, "I'm not the guy you're looking for." VRP (Aug. 16, 2017) at 1-23. Kennison was the sole witness who testified at the hearing. He testified that it was his duty to find Nelson after he escaped from the Clark County Jail Work Center and to the facts described above.

The State agreed that Nelson "was not free to leave at the time the deputy contacted him" but argued that Nelson's statement was voluntary and not made in response to an interrogation. VRP (Aug. 16, 2017) at 20-21. Nelson argued that he was interrogated because his statement was made in response to the detective's assertion, "I know who you are. . . . You're Raylyn Nelson." VRP (Aug. 16, 2017) at 17-18, 21-22.

The trial court verbally ruled that Nelson's statement was admissible, explaining that based on the surrounding circumstances, Nelson's answer, "I'm not the guy you're looking for," "was not made directly in response to a question." VRP (Aug. 16, 2017) at 23. The trial court concluded that Nelson's statement "was freely and voluntarily made. It was not in response to an interrogation or any type of interrogation made by this particular officer." VRP (Aug. 16, 2017) at 23.

The trial court did not enter written findings and conclusions as required by CrR 3.5(c).

## II. TRIAL

A jury trial was held. Sergeant Paul Flores and Detective Kennison testified for the State.

A.    Sergeant Flores's Testimony

Flores testified that it was his job to oversee the jail work center. Some inmates at the center participated in work release, while others did kitchen and laundry work at the center. Flores identified Nelson in court as a laundry worker at the center and clarified that Nelson was not on work release.

Jail inmates wear bracelets that contain the inmate's photo, central file number, height, and weight. Flores explained that inmates are instructed during orientation that they cannot leave the center. Flores testified that Nelson would have received these instructions when he moved from the jail to the center two days before Nelson escaped.

A couple of days after he arrived, staff discovered that Nelson was missing from the center. Flores testified that no one gave Nelson permission to leave the work center that day. When asked if Nelson was still serving a sentence at that time, Flores responded: "Yes, he was." VRP (Jury Trial) at 40.

The trial court admitted Nelson's amended information, his felony judgment and sentence, and the order modifying Nelson's sentence for crimes for which he was serving time at the center. Flores testified that count one on the felony judgment and sentence was conspiracy to commit possession of a controlled substance with intent to deliver—heroin. Flores also identified an order that subsequently modified Nelson's sentence for violating the terms of his sentence on the felony counts. These documents established, and Flores confirmed, that Nelson was serving a sentence of 362 days of additional total confinement for a felony at the time he left

4

the center. The amended information listed Nelson's address as "17015 NE 8th St, Vancouver WA 98684." Ex. 1.

B.        Detective Kennison's Testimony

Kennison's testimony at trial was consistent with his testimony at the CrR 3.5 hearing. He identified Nelson in court as the man he was looking for after Nelson left the center. He testified that he found Nelson near Nelson's parents' house at "17015 Northeast Eighth Street in Vancouver, Washington." VRP (Jury Trial) at 49. Kennison followed Nelson into the open field and began giving commands saying: "I'm a deputy with the Clark County Sheriff's Office. You need to stop. You're under arrest." VRP (Jury Trial) at 50. Nelson did not respond. Kennison then testified that he continued to follow Nelson and told him: "You're under arrest. Raylyn, I know it's you. You need to stop." VRP (Jury Trial) at 51. Nelson said he was not the guy that Kennison was looking for and continued walking. Kennison responded that he knew Nelson was the guy he was looking for and he arrested Nelson. Kennison testified that he was certain he found the man he was looking for because Nelson was wearing a jail bracelet with Nelson's name and photo on it, and Nelson matched the photo.

The jury found Nelson guilty of first degree escape. Nelson's judgment and sentence reflects that the trial court imposed a $200 criminal filing fee, a $100 DNA testing fee, as well as a discretionary $250 jury demand fee. The trial court also found Nelson to be indigent.

Nelson appeals his conviction and certain portions of his sentence addressing fees.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Nelson argues that the evidence was insufficient to convict him of first degree escape because the State failed to prove the element that Nelson had been "detained pursuant to a felony conviction." Br. of Appellant at 7. We disagree and conclude that the evidence was sufficient to support Nelson's conviction.

A.    Proof Required to Establish the Defendant Was the Person Being Detained
      for a Felony Conviction

We review challenges to the sufficiency of the evidence de novo. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). The State has the burden of proving all of the essential elements of the crime beyond a reasonable doubt. *Id*. Evidence is sufficient if, when viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). When challenging the evidence as insufficient, the defendant "admits the truth of all of the State's evidence" and all "reasonable inferences" that arise from the State's evidence. *Id.* at 265-66. Circumstantial evidence is just as reliable as direct evidence. *Id.* at 266. We "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

To convict Nelson of first degree escape, the State had to prove beyond a reasonable doubt that Nelson knowingly escaped from custody or a detention facility "while being detained pursuant to a conviction of a felony or an equivalent juvenile offense." RCW 9A.76.110(1).

When a prior conviction is an essential element of the crime charged, evidence of an identical name alone is insufficient to prove the person currently on trial committed the prior crime. *State v. Ceja Santos*, 163 Wn. App. 780, 784, 260 P.3d 982 (2011); *State v. Huber*, 129 Wn. App. 499, 502, 119 P.3d 388 (2005); *State v. Hunter*, 29 Wn. App. 218, 221, 627 P.2d 1339 (1981). Because many people have the same name, the State must show "by independent evidence that the person whose former conviction is proved is the defendant in the present action." *Hunter*, 29 Wn. App. at 221; *see also Huber*, 129 Wn. App. at 502; *State v. Brezillac*, 19 Wn. App. 11, 13, 573 P.2d 1343 (1978). The State can meet its burden in a number of ways including, but not limited to, presenting booking photographs or fingerprints, eyewitness identification, or other distinctive personal information. *Santos*, 163 Wn. App. at 784; *Huber*, 129 Wn. App. at 503; *Brezillac*, 19 Wn. App. at 13-14.

B.      Sufficient Evidence Supports Nelson's Conviction

Nelson relies on *Huber* and *Santos* to argue that the State did not produce independent evidence that he was the person detained pursuant to a felony conviction. This argument fails.

In *Huber*, we concluded that despite a very general physical description in the relevant warrant admitted into evidence, the record was "devoid of evidence comparing that description to the person before the court." *Huber*, 129 Wn. App. at 503 n.18. Therefore, there was insufficient evidence that the defendant was the person named in the warrant. *Id.* at 503-04. Similarly, in *Santos*, the trial court admitted certified copies of four DUI judgments bearing the name "Santos, Heraquio" or "Heraquio Santos." *Santos*, 163 Wn. App. at 785. They were insufficient to establish prior offenses because neither the State's exhibits nor any other independent evidence linked the defendant to the Santos named in the DUI judgments. *Id.* "The

7

State produced no evidence of Mr. Santos's address, birth date, or criminal history. It produced no photographs of 'Santos, Heraquio' or 'Heraquio Santos' to compare to Mr. Santos, who appeared in person at trial." *Id.*

But we have found that the testimony of an officer who could confirm that the defendant was same person who had escaped was sufficient. In *Hunter*, the trial court admitted certified copies of two judgments and sentences that showed felony convictions for "Dallas E. Hunter." *Hunter*, 29 Wn. App. at 221. The evidence also included the testimony of an officer who identified Hunter as the resident whose work release status had been revoked and who was being temporarily incarcerated while awaiting transfer to a state institution on the date he attempted his escape. *Hunter*, 29 Wn. App. at 221. We held that the officer's testimony was sufficient independent evidence to establish that Hunter was the same "Dallas E. Hunter" who was named in the judgments and sentences. *Hunter*, 29 Wn. App. at 221-22.

We have found that photographs and physical descriptions in the relevant documents that connected the defendant to the prior convictions were sufficient. In *Brezillac*, the State sought to prove the Georgia convictions to establish Brezilac's status as a habitual criminal. *Brezillac*, 19 Wn. App. at 12. The State introduced certified copies of the relevant judgments and sentences as well as prison records from the state of Georgia. *Brezillac*, 19 Wn. App. at 13. The prison records contained a photograph and physical description of the inmate, which could be compared with the defendant. *Brezillac*, 19 Wn. App. at 13-14. The prison records also matched up with court records with respect to the kinds of crimes, the name, and the length and type of sentence. *Brezillac*, 19 Wn. App. at 13-14. The court held that the State had established the necessary evidence of identity for these prior convictions. *Brezillac*, 19 Wn. App. at 14-15.

Here, there was independent evidence that Nelson was the person named in the documents admitted at trial to establish his prior conviction. The amended information contained Nelson's last known address—17015 NE 8th St, Vancouver WA 98684. Kennison testified at trial that he identified and located Nelson near his parents' residence at this same address. Kennison further identified Nelson as the person he was looking for based on his booking photo, date of birth, and physical description. Kennison testified that Nelson was wearing a jail bracelet with Nelson's name and photo on it, and Nelson matched the photo. Kennison also identified Nelson in court as the person he had been looking for.

Furthermore, Flores testified that his job was to oversee the jail work center and he identified Nelson as an inmate who worked in the laundry facility at the center. He also testified that the amended information was "specific to Mr. Nelson." VRP (Jury Trial) at 38. He identified Nelson in court as the person who had escaped from the center.

Thus, viewing the evidence in the light most favorable to the State, we hold that sufficient evidence established Nelson's identity as the person who was serving a felony sentence under the judgment and sentence admitted into evidence and who had escaped from the jail work center.

III. Admission of Nelson's Statement Under CrR 3.5

Nelson argues that the trial court erred in admitting the statement he made to Kennison— "I'm not the guy you're looking for." VRP (Aug. 16, 2017) at 17. We hold that the trial court properly concluded the statement was admissible.

A.    Admissibility of Nelson's Statement Under CrR 3.5

A person in a criminal case cannot be compelled to be a witness against himself. *State v. Unga*, 165 Wn.2d 95, 100-01, 196 P.3d 645 (2008). "*Miranda* warnings must be given when a suspect endures (1) custodial (2) interrogation (3) by an agent of the State." *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). "Without *Miranda* warnings, a suspect's statements during custodial interrogation are presumed involuntary" and therefore are inadmissible. *Id.* A statement is voluntary if it is spontaneous, not solicited, and not the product of custodial interrogation. *State v. Sadler*, 147 Wn. App. 97, 131, 193 P.3d 1108 (2008).

Here, the State and Nelson agree that Nelson was in custody and he made his statement to an agent of the State. Thus, the issue is whether Nelson was subject to an interrogation.

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980); *State v. Sargent*, 111 Wn.2d 641, 650, 762 P.2d 1127 (1988). This is an objective standard "focusing on what the officer knows *or ought to know* will be the result of his words and acts." *Sargent*, 111 Wn.2d at 651.

We review a trial court's ruling after a CrR 3.5 hearing to determine whether substantial evidence supports the trial court's findings of fact and whether those findings support the trial court's conclusions of law. *State v. Chambers*, 197 Wn. App. 96, 131, 387 P.3d 1108 (2016), *review denied*, 188 Wn.2d 1010 (2017). We review the trial court's conclusions of law de novo. *Chambers*, 197 Wn. App. at 131.

B.      Failure to Enter Written Findings of Fact and Conclusions of Law

Nelson argues that the trial court erred in failing to enter written findings of fact and conclusions of law after the CrR 3.5 hearing. The State agrees that the trial court erred, but contends that the error is harmless. We agree the error is harmless.

The trial court made verbal findings of fact and conclusions of law that Nelson's statement was not made in response to a question "or any type of interrogation." VRP (Aug. 16, 2017) at 23. The trial court ruled that Nelson's statement was admissible, explaining that based on the surrounding circumstances, Nelson's answer: "I'm not the guy you're looking for," "was not made directly in response to a question." VRP (Aug. 16, 2017) at 23. The trial court concluded that Nelson's statement "was freely and voluntarily made. It was not in response to an interrogation or any type of interrogation made by this particular officer." VRP (Aug. 16, 2017) at 23. The trial court did not, however, enter any written findings of fact and conclusions of law.

Criminal Rule 3.5(c) provides that after a CrR 3.5 hearing, the trial court "shall set forth in writing: (1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusions as to whether the statement is admissible and the reasons therefor." Although a trial court errs by failing to enter written findings of fact and conclusions of law as required by CrR 3.5(c), such error is harmless if the trial court's verbal findings are sufficient for appellate review. *State v. Bluehorse*, 159 Wn. App. 410, 423, 248 P.3d 537 (2011); *State v. Cunningham*, 116 Wn. App. 219, 226, 65 P.3d 325 (2003).

Here, the trial court provided explicit verbal findings that addressed facts and then applied the law to the facts. The trial court's verbal findings and conclusions here are sufficient to permit appellate review. Therefore, we hold that the error is harmless.

C.      Custodial Interrogation

At issue is Nelson's statement to Kennison: "I'm not the guy you're looking for," made after Kennison said: "I know who you are. . . . You're Raylyn Nelson. You need to stop. You're under arrest." VRP (Aug. 16, 2017) at 17-18.

Nelson argues that Kennison's statement was an interrogation because it invited a response, either agreement or disagreement. Nelson says that his response was incriminating because it showed consciousness of guilt. Nelson relies on cases explaining that the technique of positing guilt amounts to interrogation in a custodial setting. *Innis*, 446 U.S. at 299 ("It is clear that these techniques of persuasion, no less than express questioning, were thought, in a custodial setting, to amount to interrogation."). But Kennison did not posit guilt or accuse Nelson of anything. Instead, he identified him and ordered Nelson to stop.

Nelson also relies on *State v. Wilson*, 144 Wn. App. 166, 181 P.3d 887 (2008). But *Wilson* is distinguishable. Wilson requested an attorney and the interview was terminated. *Id.* at 182. Later, the officer reentered the interrogation room and told Wilson that her husband had died. *Id.* at 182-83. Wilson then said: "I didn't mean to kill him. I didn't mean to stab him." *Id.* at 183. Division Three held that "[g]iven Ms. Wilson's situation, the officer should have known that the death notification was reasonably likely to elicit an incriminating response." *Id.* at 184.

Nelson additionally argues that his statement was not voluntary and spontaneous. He contends that a statement is voluntary and spontaneous only when it is unrelated to the crime being investigated. Nelson relies on a line of cases finding spontaneity where incriminating statements were offered during a conversation about some unrelated issue or aspect of the case. But we do not focus solely on whether the conversation was about an unrelated aspect of the case. *See State v. McIntyre*, 39 Wn. App. 1, 4, 691 P.2d 587 (1984); *Sadler*, 147 Wn. App. at 131. In determining whether a defendant's statement is spontaneous, we have also considered whether "[t]he actions by the police were those normally attendant to arrest," rather than "equivalent to interrogation." *McIntyre*, 39 Wn. App. at 6.

Here, Kennison's statement—"I know who you are. . . . You're Raylyn Nelson. You need to stop. You're under arrest"—was made in an attempt to get Nelson to stop. VRP (Aug. 16, 2017) at 17-18. This statement was part of a normal arrest process, occurring before Kennison even caught up with Nelson, and made to explain why the officer was arresting him. The statement was attendant to arrest and was not reasonably likely to elicit an incriminating response.

Substantial evidence supports the trial court's verbal finding of fact that Nelson's statement was not made in response to a question. This finding supports the trial court's conclusion of law that Nelson's statement was "freely and voluntarily made" and "not in response to an interrogation." VRP (Aug. 16, 2017) at 23. Thus, we hold that the trial court did not err when it admitted Nelson's statement under CrR 3.5.

IV. NELSON'S CHALLENGE TO VARIOUS FEES IMPOSED AT SENTENCING

A.    Jury Demand Fee

Nelson argues that the $250 jury demand fee included in the judgment and sentence is a scrivener's error. The State concedes and agrees that the trial court did not intend to include the jury demand fee in the judgment and sentence. The jury demand fee is a discretionary legal financial obligation. *State v. Lundy*, 176 Wn. App. 96, 107, 308 P.3d 755 (2013). At sentencing, the trial court appeared to waive discretionary fines and costs since Nelson would not be working for a couple of years. Because the trial court stated it would not impose discretionary financial obligations, we accept the State's concession and remand for the trial court to strike the jury demand fee.

B.    Criminal Filing Fee and DNA Fee

In supplemental briefing, Nelson argues that recent amendments to the statutes addressing legal financial obligations require us to vacate the $200 criminal filing fee and $100 DNA collection fee that the trial court imposed. The State argues that this matter should be remanded to the trial court to make necessary factual determinations. We agree that remand is appropriate.

The legislature recently amended RCW 43.43.7541 and RCW 36.18.020(2)(h). LAWS OF 2018, ch. 269, §§ 18, 17. These statutory amendments apply prospectively to cases pending on appeal. *Ramirez*, 191 Wn.2d at 747. RCW 36.18.020(2)(h) now prohibits the imposition of the criminal filing fee on defendants found indigent under RCW 10.101.010(3)(a) through (c). Although the trial court found Nelson indigent, the record does not reveal if he was found indigent under one or more of these specific subsections, and not a fourth subsection that does

14

not warrant waiver. RCW 36.18.020(2)(h); RCW 10.01.160(3) (requiring waiver only if the defendant meets the definition of indigency found in RCW 10.101.010(3)(a) through (c), but not (d)). Thus, we remand to determine whether the criminal filing fee should be imposed under the new statute.

RCW 43.43.7541 now prohibits the imposition of the DNA collection fee if Nelson's DNA has already been collected as the result of a prior conviction. Nelson has a prior felony conviction, but the record does not show whether his DNA has already been collected. Thus, we remand for the trial court to determine whether the DNA collection fee should be imposed under the statute.

C.      Total Legal Financial Obligations

Nelson argues that the trial court erred in failing to establish the total amount of legal financial obligations in his judgment and sentence. The State concedes this issue. We accept the State's concession.

RCW 9.94A.760(1) provides that "[t]he court must on either the judgment and sentence or on a subsequent order to pay, designate the total amount of a legal financial obligation and segregate this amount among the separate assessments made for restitution, costs, fines, and other assessments required by law." Here, the judgment and sentence does not list the total amount of legal financial obligations and the record before us does not contain a "subsequent order to pay." RCW 9.94A.760(1). We remand for the trial court to correct this error after correcting the judgment and sentence in accordance with this opinion.

No. 51016-2-II

## CONCLUSION

We hold that sufficient evidence supports Nelson's conviction of first degree escape. We conclude that the trial court's failure to enter written findings of fact and conclusions of law after the CrR 3.5 hearing is harmless and that the trial court properly admitted Nelson's statement made to the detective. We also conclude that the jury demand fee in Nelson's judgment and sentence was a scrivener's error. We affirm, but we remand to the trial court to delete the jury demand fee, to determine Nelson's legal financial obligations in light of *Ramirez* and the revised statutes, and to establish Nelson's total amount of financial obligations.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Glasgow, J.

We concur:

_____
Worswick, J.

_____
Lee, A.C.J.

16